MAGEE, adm'r of Magee, *vs.* VEDDER.

A surrogate has no power to decide upon the validity and amount of a claim against an estate, upon the petition of a creditor praying for a decree directing its payment, when such claim is disputed by the executor, and the right of the surrogate to make such a determination is denied.

THIS was an appeal from a decree of the surrogate of the county of Greene. On the 3d of April, 1841, Vedder presented to the surrogate a petition stating that he was a creditor of the estate of Ephraim Magee deceased, to the amount of about sixty dollars, and praying that the administrator might be decreed to pay the whole, or a proportional part, of such debt. The surrogate thereupon issued a citation requiring the administrator to appear before him on the 24th of May ensuing and render an account of his administration. At the time appointed, the parties appeared before the surrogate, and the administrator rendered his account, verified by his affidavit, in the usual form, and insisted that the surrogate had no jurisdiction to determine the validity of the respondent's claim, it being an unliquidated and disputed demand. The surrogate overruled the objection, and proceeded to try the validity of the claim, which was finally allowed at $51,90. On the 21st of December, 1841, the surrogate made a decree directing the administrator, within thirty days, to pay the amount of Vedder's debt as settled by him, with interest; also the surrogate's fees, amounting to $51,29, and Vedder's costs, including witnesses and attorneys' fees, taxed at $75,19. From this decree the administrator appealed.

*John Van Vleck,* for the appellant.

*H. Hogeboom,* for the respondent.

*By the Court,* HARRIS, J. The question presented in this case is one of jurisdiction. It is, whether the statute has con-

ferred upon the surrogate the power of deciding upon the validity of a claim against an estate, when such claim is disputed, and the right of the surrogate to make such determination, is also denied. Before considering this question it may be proper to state the facts upon which it is presented. The appellant was appointed administrator of the estate of Ephraim Magee deceased, in February, 1838. In December following he caused a notice to be published in the manner prescribed by law, requiring all persons having claims against the deceased to exhibit the same, with the vouchers thereof, to him at his dwelling house in Catskill, on or before the 15th day of June, 1839. The respondent omitted to present his claim. It is not alledged that the respondent ever exhibited the claim to the appellant, or requested him to pay it. The respondent's claim, as presented before the surrogate, consisted of a balance due upon a note against the deceased, dated in November, 1834, and a book account which accrued in 1835 and 1836. The first effort made by the respondent to obtain payment of his demand, so far as it appears from the surrogate's return, was the presentation of his petition on the 3d of April, 1841. The surrogate, notwithstanding the objection made to his jurisdiction, proceeded to determine upon the validity of the respondent's claim, and, after litigation before him, established it to the amount of $51,90, and then made a decree against the appellant for the payment of this amount, together with all the costs of the proceedings, which were taxed by him at $126,48, although the balance due from him to the estate as the account was settled by the surrogate, was but about $72 ; thus in effect charging the appellant personally with the principal part of the costs. It is proper to add that a considerable part of these costs were incurred in the litigation of the appellant's account.

The question thus arises, whether the surrogate has been invested by the legislature with the power to adjudicate upon the validity and amount of contested claims against an estate, subject to his jurisdiction. I say *by the legislature*, for it will not be denied that all the powers of the surrogate are derived from that source. Whatever he does, beyond the express or

Magee *v.* Vedder.

clearly implied authority of statute, is beyond his jurisdiction, and void.

Upon a very careful examination of the provisions of the statutes in relation to the powers and duties of surrogates, and of executors and administrators, in respect to the creditors of an estate, I have become entirely satisfied that the legislature did not intend to confer upon the surrogate any such jurisdiction. It is certain that no such power is given in express terms; and upon comparing the various provisions of the statute with each other, I am equally certain that no such power was intended. The leading object of the legislature, apparent upon the face of every section of this carefully framed title of our statutes, is to effect a speedy settlement and distribution of estates, upon principles of equality, with the least possible expense either to the estate or to creditors, consistent with a faithful examination, on the part of the representative of the estate, into the fairness and validity of every claim against it. Hence, it is provided that at the end of six months from the time of his appointment, the executor or administrator may require the creditors of the estate, within a limited period, to exhibit to him their claims, with the vouchers thereof; and with a view to enable him to determine whether the claim is just and fair, he is authorized to require the claimant, not only to produce " satisfactory vouchers in support of the claim," but to superadd his own affidavit that the claim is justly due, that no payments have been made thereon, and that there are no offsets against it, to his knowledge. Having the claim thus before him, with the evidence upon which it rests, and proof, by the affidavit of the claimant, that there is nothing which ought in justice to defeat it, it becomes his duty, in the faithful discharge of his trust, to decide whether he will admit or reject the claim. If he is still in doubt as to its merits, an amicable reference is provided for, to determine the question. If he is satisfied that the claim is unjust, it is his duty to reject it, and then the claimant must bring his suit within six months, for the recovery of the claim, or his right of action will be barred. If the executor or administrator, when the claim is thus presented, or at least within a reasona-

Magee v. Vedder.

ble time thereafter, does not offer to refer the claim on the ground that he doubts its justice, or disputes it as unjust, it is to be deemed, I apprehend, a liquidated and undisputed debt against the estate. To protect the creditor against an arbitrary or unreasonable exercise of the power thus conferred upon the executor of determining whether a claim presented to him shall be litigated, the court in which the suit is brought is authorized, in case it shall appear that the demand was presented in time, and that its payment was unreasonably resisted or neglected, or that the executor or administrator refused to refer it, to charge the costs upon the executor or administrator personally, or upon the estate, as shall be just. This provision is made to secure the presentation and liquidation of all demands against the estate within eighteen months from the time of granting letters of administration or testamentary. The statute then proceeds to make provision for the settlement of the accounts of the executor or administrator and the distribution of the estate. And as the notice to creditors to exhibit their claims is not to be published until six months have elapsed from the time of granting administration, and as the creditor has six months from the time of the publication of such notice, to present his claim, and if disputed has six months further time within which he may bring his action, the statute, contemplating the possibility that there may be suits yet undetermined upon litigated claims, when the executor or administrator comes into the office of the surrogate for his final settlement, makes provision for retaining an amount sufficient to satisfy such claim, or its just proportion, in case of an eventual recovery. But of what avail are all these provisions, so admirably adapted to attain the end for which they were devised, if any one, making a claim upon an estate, however unjust or unfounded, may, at his pleasure, disregard them all, and without ever presenting his claim to the executor or administrator, may at any time, after six months shall have elapsed from the granting of letters testamentary or of administration, present his application to the surrogate for a decree directing the payment of his claim or a proportional part thereof, and thus compel the representative of the estate to liti-

Magee v. Vedder.

gate the claim before the surrogate, instead of referring the controversy to the more appropriate legal tribunals. There is nothing in the section of the statute under which such jurisdiction is claimed which, in my judgment, authorizes, much less requires, such a construction. It is true the surrogate, by the 18th section of the title which relates to the rights and liabilities of executors and administrators, is authorized, in his discretion, to decree the payment of *any debt* against the estate or a proportional part thereof; but it does not authorize him to try the validity of the debt. The debt must first have been established in some of the modes prescribed in the preceding provisions. The surrogate may, doubtless, upon an application under the section referred to, determine the fact whether the applicant has a debt which has been established. Thus, if it is made to appear that the claim has been presented to the executor or administrator and that he has either directly admitted it or failed to dispute it, or that a judgment has been recovered upon the claim against the estate, the surrogate may then proceed upon it as an *undisputed debt*. But, so long as the demand is in a condition to be contested by the executor or administrator, the surrogate will find in this section no authority to proceed.

The only section which seems to justify the surrogate in assuming the power of determining upon the validity of a debt, is the 71st section of the third title, (2 *R. S.* 95,) which provides that whenever an account shall be rendered and finally settled, if it shall appear to the surrogate that any part of the estate remains to be paid or distributed, he shall make a decree for the payment and distribution of what shall so remain, to and among the creditors, legatees, &c. and in such decree *shall settle and determine all questions concerning any debt*, claim, legacy, &c.; to whom the same shall be payable, and the sum to be paid to each. Considered by itself, the language of this section would seem to require of the surrogate the determination of the validity of all debts and claims existing against the estate at the time of the final settlement. And yet I apprehend that it was intended to impose no such duty upon the surrogate. I can not so well express what I regard as the manifest intention of the

legislature in this respect, as by quoting the language of the late surrogate of New-York, in considering his own powers under this 71st section. " The words of this section," he says, " would appear to require the surrogate to settle, adjust, and determine upon the validity of all debts. But the statute must be taken all together, and effect must be given to all its provisions. If there are debts which are doubtful, they are to be referred. If the justice of them is disputed, the creditor must sue for them. Having pointed out these remedies, the legislature never could have intended by this 71st section to give the surrogate a right to decide upon the validity of such claims. What then does this 71st section mean, when it declares that the surrogate shall settle and determine all questions concerning any debt, claim, legacy, &c. ? It must be remembered that this section relates to the final settlement and distribution of the estate, *prior* to which, it is to be presumed that all the debts are ascertained. If there be any for which a suit is pending, by the 74th section the surrogate is to suffer the executor to retain in his hands moneys sufficient to pay such debts. It does not give the surrogate power to decide upon the validity of the debts in suit, and proceeds upon the ground that all disputed debts are in suit, because by a prior section the creditor is required to put them in suit within six months after the executor disputes and refuses to allow them. When, therefore, the 71st section declares that the decree of the surrogate shall settle and determine all questions concerning any debt, &c., *it does not mean that he is to determine the validity of the debts, but their priority, the amount due upon them, and to whom they belong, whether to the original creditor or to his assignee or his executor, &c.*" The opinion from which I have thus liberally quoted, was delivered in the matter of the estate of John Kent, deceased, and is found in the appendix to Dayton's Surrogate. It is true it is but the opinion of a surrogate; but when that surrogate is *David B. Ogden,* whose legal eminence and virtues alike fit him to adorn the most exalted judicial station, the opinion, though it may not come to us with binding authority, can not fail to command the highest respect. In the same opinion, that distinguished jurist

proceeds to vindicate his construction of the statute, by referring to the kindred provisions of the statute in relation to the sale of real estate for the payment of debts, in which it is expressly provided that any heir or devisee of the real estate may *contest* the validity and legality of any debts, &c.; and if, upon the hearing, any question arises which can not be satisfactorily determined without a trial by jury, the surrogate is authorized to award a feigned issue to try such question. (2 *R. S.* 102, §§ 10, 11, 14.)    No such power having been given in express terms, in other cases, it is fair to presume that the legislature only intended to confer this jurisdiction upon the surrogate when application should be made for the sale of real estate for the payment of debts.

The same construction was given to the statute by Mr. McVean, the successor of Mr. Ogden, himself also an experienced officer and a sound lawyer.    In the matter of the accounting of Jones, executor of John Mason, reported in 5 N. Y. Legal Observer, 124, he says:  " The surrogate has not the jurisdiction *to try or to establish* a disputed debt, under any circumstances. Such jurisdiction is exclusively in the common law courts."    All the surrogate can do in this respect is to determine the fact whether or not the debt has been established.

The only adjudged case with which I have met, which seems to conflict with this construction of the statute, is that of *Kidd* v. *Chapman*, (2 *Barb. Ch. Rep.* 414.)    In that case a judgment had been recovered against the testator a few days before his death.    After letters testamentary had been granted, the attorney of Chapman, the plaintiff in the judgment, called upon the executor, *with the judgment*, and requested payment.    The executor promised to consult with his legal adviser that afternoon, and let the attorney know whether the judgment would be paid.    Nothing more was done.    More than eighteen months having elapsed after granting letters to the executor, Chapman presented to the surrogate his petition, *stating these facts*, and praying that the executor might be decreed to pay the amount due upon the judgment.    Upon the return of the citation the executor appeared and disputed the debt, and insisted that the

Magee *v.* Vedder.

surrogate had no jurisdiction to decree payment, until it had been established upon a reference, or by judgment against the executor. The creditor, to obviate this objection, proved the circumstances in relation to the presentation of the judgment to the executor. The executor still insisted that the facts proved amounted to a rejection of the claim, and that not having been sued within six months after it was presented, it was barred by the statute. The surrogate overruled the objection, and made a decree for the payment of the judgment, with costs. Upon appeal the decree was affirmed with costs. It is not easy to see, from the chancellor's opinion in the case, the precise ground upon which his decision is founded. The surrogate decided that the claim had not been rejected. The chancellor sustained his decision. Whether or not the surrogate regarded what occurred when the attorney applied to the executor for payment as an admission of the demand, and therefore held that he had authority to proceed to make a decree for its payment as an undisputed debt, or whether, having merely decided that the debt had not been rejected by the surrogate, he had the power to proceed to try its validity, does not distinctly appear from the report of the case. Nor does it appear whether the chancellor regarded it as an established debt, or not. It is to be inferred, however, from the chancellor's language, that he regarded the surrogate as possessing the power to determine upon the validity of a claim, upon the application of a creditor for a decree directing the payment of his debt; for he says, "it is in the discretion of the surrogate to determine whether he will, in the first instance, permit the claim to be litigated before him;" thus implying that, in the opinion of the chancellor, the surrogate would have jurisdiction of the matter if he should choose to entertain the litigation. In respect to the case before him, all he says is that *he thinks the surrogate had power to decree payment of the respondent's judgment,* although the executor did not ask for a final settlement of his accounts, and under the circumstances of the case it was the duty of the surrogate to make the decree. In the decision of the surrogate and the chancellor, upon the facts before them, I entirely concur. The facts proved

amounted to an admission of the claim, sufficient to justify the surrogate in proceeding to make a decree for its payment as an undisputed debt. The claim, in the opinion of the chancellor, was not in fact controverted by the executor before the surrogate, and I think he was not at liberty to controvert it. Whatever may have been the views of the chancellor, in respect to the question now under consideration, he does not seem to have considered that question as necessarily involved in the decision of the case before him. I do not, therefore, regard the case as a judicial determination of the question. I do not think the chancellor himself so understood it. The case was properly decided, whatever construction may be given to the provisions of the statute in relation to the surrogate's jurisdiction to determine upon the validity of contested claims.

One other case deserves to be noticed in this connection. It is that of *Fitzpatrick* v. *Brady*, (6 *Hill*, 581.) A suit having been brought against the executor, upon a note made by his testator, the defendant pleaded a former adjudication of the surrogate against the validity of the note, upon a litigation before him, in bar. Upon demurrer it was held that the decision of the surrogate was not a bar to the action. The court do not seem to have had in view the distinction between the jurisdiction of the surrogate in respect to disputed and undisputed debts. Yet, I apprehend it is the only ground upon which the decision is sustainable. If the surrogate had jurisdiction to try the validity of the demand, and did try it, and decided that it was not a valid debt against the estate, upon what principle could another court entertain jurisdiction of the same question? The decision, in my judgment, can only be defended upon the ground that the surrogate had no power to decide upon the validity of a contested claim, and, if he undertook to make such a decision, he transcended his jurisdiction, and his decision was therefore not binding upon the parties.

After having so studiously provided for the speedy settlement of estates, without unnecessary expense, it never could have been intended by the legislature to allow the creditor the chances of a double litigation. If the surrogate, as well as the common

law courts, has jurisdiction to try all contested demands, I see nothing to prevent an adventurous claimant from trying his fortune before both tribunals. The case of *Fitzpatrick* v. *Brady* decides that a decision against the claim, by the surrogate, is not a bar to an action at law. What then is to prevent the claimant from first proceeding before the surrogate, and that too without even exhibiting his claim before he institutes his proceedings, under the 18th section of the 5th title? If he succeeds there, the decision of the surrogate must be conclusive upon the executor or administrator, unless by possibility he, by an appeal, transfers the litigation to a court of equity. And on the other hand, if he fails, the decision of the surrogate is not to prevent his renewing the litigation in a court of law. No such inconsistency was ever contemplated by the legislature. No principle of construction requires that such an effect should be given to any provision of the statute. I have had frequent occasion to admire the ability with which the great work of the revision of our statutes in 1830 was accomplished. Among the labors of the revisers I have been accustomed to regard that which relates to the settlement of estates as standing pre-eminent. I find in it a complete, simple, efficient system of proceedings, from first to last, providing for every thing necessary to be done to secure to creditors, in the first instance, the full benefit of the estate, with the least possible delay and at the least possible expense; and then, to preserve what remains, unwasted by useless litigation, for those who may be entitled to enjoy it. I confess my reluctance to attach to a system so admirable in itself, by the construction necessary to sustain the decision which is the subject of this appeal, what I should regard as so radical an imperfection; unless constrained to do so by controlling authority, or the manifest intention of the legislature. I am not satisfied that either exists. The decree of the surrogate must therefore be reversed, but under the circumstances of the case, it might not be just to charge the respondent with the costs of the appeal. The decree may provide that the appellant retain his costs out of the estate in his hands.