WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SUR-
ROGATE.—September, 1882.

DU BOIS v. BROWN.

*In the matter of the judicial settlement of the account of*
ISAAC F. BROWN, *as executor of the will of* DEBORAH
ORSOR, *deceased.*

It is impossible to *dispute the validity of a distributive share,* there being noth-
ing to dispute but the statute of distributions.    Hence the words " dis-
tributive share " must be deemed to have been inadvertently inserted
in Code Civ. Pro., § 2743, providing that where, upon an accounting,
"the validity of a debt, claim or distributive share is not disputed, or
has been established, the decree must determine to whom it is payable,
the sum to be paid by reason thereof, and all other questions concern-
ing the same."

Where the construction of a statute had been settled by adjudication, a mere
change of phraseology, made in a revision of it, by the Code of Civil
Procedure, should not be deemed to change the law, unless it evidently
appears that such was the intent of the legislature.

Code Civ. Pro., § 2743, so far as it relates to the question of the Surrogate's
jurisdiction to determine disputes upon the judicial settlement of an
executor's or administrator's account, does not differ materially from 2
R. S., 95, § 71, which it supersedes; the legislative intent, in the former,
being to conform the statute to the decision in Tucker v. Tucker (4
*Keyes,* 136), concerning a disputed *debt.*

*It seems,* that a Surrogate's court has jurisdiction, upon the judicial settle-
ment of an executor's account, to construe the will, where a construc-
tion thereof is necessary in order to a distribution of the testator's es-
tate.

2 R. S., 65, §§ 50, 51, relating to gifts by will to a subscribing witness, were enacted with a two-fold object; first, to render competent a witness who would otherwise not have been so, and secondly, to guard against fraud in the preparation and execution of wills.

Where an executor drew moneys of testator's estate out of a savings bank where they were deposited, and placed them in his own bank, supposing himself entitled thereto,—

*Held*, that he was chargeable with interest on the moneys, in favor of those to whom they belonged, which must, however, as he acted innocently, be reckoned at four per cent.

W., who died in 1864, by his will, of which B. qualified as executor, directed the residue of his estate to be converted into money, and invested in securities for the benefit of his sisters D., S. and M., equally, during their lives, but omitted to dispose of the remainder.   Subsequently, D. died, leaving a will, of which B. qualified as executor, and to which he was one of two subscribing witnesses, whereby she constituted B. and X. her residuary legatees, with equal shares.   B. was a nephew of D., and resided in the State at the time of the probate of her will.   On an accounting by B., as executor of W.'s will, the amount of the residuum of the latter's estate was ascertained, and B. was decreed to invest it and divide the income as directed in the will.   Upon the judicial settlement of B.'s account, as executor of D.'s will, a contest having arisen as to B.'s right, as legatee under that will, to one half of the residuum,—

*Held,*, that, on W.'s death, the title to one third of the remainder of his residuary estate vested in D., as one of his next of kin; that this fund came into the hands of B., as executor of W., and, after D.'s death became a claim, in the hands of B., as her executor, which he must be deemed to have collected, and constituted a part of the residuum attempted to be given, by her will, to B. and X.; that the shares of these residuary legatees were separable, B.'s being void under the statute, because he was a necessary witness to prove the will of D.; that B.'s half of the residue, accordingly, except so much thereof as he was entitled to under 2 R. S., 65, § 51, passed to D.'s next of kin, under the statute of distributions.

The summing up of counsel, upon executors' accounting is a "hearing upon the merits," for which the *per diem* allowance of costs, specified in Code Civ. Pro., § 2561, may properly be made.

The time which may have been spent by an attorney in preparing pleadings, making briefs, ascertaining facts, appearing upon an adjournment, or appearing to settle a decree, is no part of the "trial or hearing upon the merits," within the meaning of that section.

In order to enable the Surrogate to act understandingly, in awarding costs and allowances to an accounting executor, etc., under Code Civ. Pro., §§ 2561, 2562, the latter should present an affidavit *showing separately* the number of days necessarily occupied (1) by the trial or hearing upon the merits, (2) in preparing the account for settlement, and (3) in

*otherwise preparing for the trial. A statement of the whole number of days, in gross, is improper.*

An executor. etc., who, upon an accounting, receives the maximum award of *per diem* costs, under Code Civ. Pro., § 2561, viz.: ten dollars a day, for each of the days *less two*, occupied in the trial, may, under id., § 2562, authorizing an award of "not exceeding ten dollars for *each day* occupied in the trial," be allowed twenty dollars, in addition, for the two days excluded by the former section.

Upon an application to a Surrogate's court, for costs and allowances, a bill of costs and disbursements, including stenographer's fees, should be presented, and notice of taxation be given, as in the Supreme Court.

*It seems,* that, where an executor appeals individually from the decree of a Surrogate's court declaring void a legacy attempted to be given to him in the will of his testator, and directing him to distribute the amount among the next of kin, an undertaking filed by him in the sum of $250, under Code Civ. Pro., § 2577, is sufficient, and an additional undertaking, under id., §§ 2578, 2580, is not requisite to stay execution.

After the filing and service of a sufficient notice of appeal from the decree of a Surrogate's court, and of an undertaking to render the appeal effectual, the matter is removed from its jurisdiction, and proceedings predicated upon the insufficiency of an undertaking filed by the appellant must be initiated by the respondent in the appellate court.

DEBORAH ORSOR died in 1879, leaving a last will and testament dated September 10th, 1877. By the will, which was prepared by Isaac F. Brown, a nephew, the testatrix, after bequeathing various legacies, gave and bequeathed to said Isaac F. Brown and to Margaret Miller the residue of her estate, real and personal, to be equally divided between them. Said Brown was appointed one of the executors of the will, and was also one of the two subscribing witnesses to the execution of the same. At the time of said execution, and continually thereafter he resided in the town of Ossinning, in Westchester county. The will was proved in the Surrogate's court of that county in March, 1880, and admitted to probate on the testimony of said Brown and the other subscribing witness.

The testatrix left her surviving no husband or descend-

ant, and her only heirs-at-law and next of kin were a sister and several nephews and nieces, children of deceased brothers and of a deceased sister. On the filing of the executors' account of proceedings some questions were raised upon these facts, and upon others which are sufficiently stated in the opinion.

FRANCIS LARKIN *and* N. H. BAKER, *for the executor.*

JOHN G. MILLER, *for Margaret Miller, one of the residuary legatees.*

CHARLES M. HALL, *for Mary Dubois and others, next of kin.*

THE SURROGATE.—As the next of kin claim that the provision of the will in favor of the executor is void by statute, and that they, as such, are entitled to their several distributive shares of the amount of the bequest attempted to be made to him, and as this claim is disputed by the executor, it becomes necessary to determine whether this court has, under the provisions of the Code of Civil Procedure, any jurisdiction in the premises. I do not perceive anything in the third sentence of § 2743 preventing me from passing upon the question. It strikes me that the words "distributive share" have been inadvertently inserted, as it is impossible to conceive how the validity of a distributive share can, or cannot be disputed. The sentence implies the existence of such share. If the share exist, it is because it is fixed by statute; and if it be disputed, it is disputing the statute. There seems to be no provision prohibiting the Surrogate from determining a controversy as to whether a person claiming to be the owner of and entitled to a distributive share is so entitled. I think, we have no right to inter-

polate words which would have the effect of depriving him of a power heretofore exercised. Striking out those words, he is simply deprived of the jurisdiction, as he has been hitherto, of trying the validity of a debt or claim which is disputed.

Section 71 of the Revised Statutes (*2 R S.*, *95*) and section 2743 of the Code, so far as this question is concerned, do not differ very materially. The former provided that the Surrogate, in his decree, should settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, to whom it should be payable, and the sum to be paid. The latter that, where the validity of a debt, claim or distributive share is not disputed, or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same. This, of course, means that the Surrogate must determine all questions other than that of the validity of the debt, etc., and he is directed by his decree to determine to whom the same is payable and the sum to be paid. If there arise a question on either subject, surely his decree cannot determine it unless he try and decide it. How, therefore, when there is a dispute as to a right to a distributive share, or as to the amount of any such share, can he escape or evade the duty of trying and deciding it? See Riggs v. Cragg (*89 N. Y.*, *479*), reported since this opinion was prepared.

The long controversy in the courts, as to the power of a Surrogate to try a disputed debt or claim, was finally put at rest by the Court of Appeals, in Tucker v. Tucker (*4 Keyes*, *136*), denying such power. That decision was based upon the reasoning of Harris, J., in Magee v. Ved-

der (*6 Barb., 352*). That able jurist reviewed all the statutory provisions relating to the mode of recovering debts against deceased persons, the notice to creditors, the presentation of debts or claims to the executors, and the provisions for reference in case of dispute, etc., and he pronounced the scheme of the revisers in that regard admirable. It will be readily seen that there was, and is, no scheme as to legacies or distributive shares, no provision for publication, for presentation, or for reference in case of dispute as to person or amount.

I am not aware that the power of a Surrogate to determine a controversy as to the person of a legatee or distributee, or the amount to which either was entitled, has ever been questioned; but the books are full of cases where it has been done and sanctioned by the appellate courts. Even in Magee v. Vedder, the learned judge quoted, with strong expressions of approbation, the language of Surrogate Ogden, in regard to the power of a Surrogate to try a disputed debt. He said: "When, therefore, the 71st section declares that the decree of the Surrogate shall settle and determine all questions concerning any debt, etc., it does not mean that he is to determine the validity of the debts, but their priority, the amount due upon them, and to whom they belong, whether to the original creditor or to his assignee or his executor, etc."

Among other cases, showing a recognition by the higher courts of the power of the Surrogate to try and determine the question of a right to a distributive share, I may mention the case of the will of Isaac M. Singer, where the sole question tried before me, and where some $15,000,000 was involved, was whether Mrs.

Foster was his widow and entitled to a distributive share of his estate as such. Able and distinguished counsel, among whom was a former judge of the Court of Appeals, resisted her claim upon the merits, and never questioned the power of the Surrogate to try it. The same case on appeal may be found reported under the title of Foster v. Hawley (*8 Hun, 68*). Again, in the matter of the estate of John A. Merritt, who died intestate, leaving assets amounting to over $1,250,000, the only question presented for determination was who were entitled to distributive shares, it being decided by this court which of the numerous claimants were, and which were not entitled to such shares. The power of the Surrogate to determine was not questioned by any of the astute counsel engaged, nor was such an objection raised in the appellate courts, the case being reported (in *14 Hun, 551*), under the title of Adee v. Campbell, and also in *79 N. Y., 52*. In Hurtin v. Proal (*3 Bradf., 414*), the right of the uncle to a distributive share was disputed and was determined by the Surrogate. Like jurisdiction was exercised 'by him in the case of Ferrie v. Pub. Administrator (*3 id., 151, 249; 4 id., 28;* affi'd, Caujolle v. Ferrie, *23 N. Y., 90*). The same may be said of the cases of Hallett v. Hare (*5 Paige, 315* [*1835*]) and Rose v. Clark (*8 id., 574* [*1841*]).

It is, perhaps, unnecessary to mention other cases, in order to show that it was the uniform and unchallenged practice of Surrogates, under section 71, sanctioned by the superior courts, to hear and determine such questions. Now, as I understand the rule as to construction of statutes, it is that, where the law is settled by adjudications giving it a certain construction or effect, a mere change of phraseology made in a revision should not

be deemed or construed as a change in the law, unless it evidently appears that such was the intention of the legislature (Taylor v. Delancy, *2 Cai. Cas.*, *143*; Goodell v. Jackson, *20 Johns.*, *697*, *722*; Matter of Brown, *21 Wend.*, *316*).

It will be observed in this connection, that the commissioners' notes to §§ 2742 and 2743 relate exclusively to the power of a Surrogate to try a disputed claim against the deceased. No other meaning to the word " claim" is suggested, there or in the decisions.

Another rule as to construction is that a long and uninterrupted practice under a statute is regarded as good evidence of its construction (Fort v. Borch, *6 Barb.*, *60*, *73*; based on *5 Cranch*, *22*).

It is quite apparent, from the notes of the commissioners, that the legislative intention was simply to conform the statute to the decision in the case of Tucker v. Tucker, regarding a disputed debt. At most, there is nothing in the Code to forbid Surrogates from deciding a controversy in regard to the title to, or any other question concerning a legacy or a distributive share, any more than there was in the Revised Statutes. It having, therefore, been the unbroken and unquestioned practice of the Surrogates' courts for upwards of half a century to hear and determine such controversies, and the sections of the Code referred to having in no way circumscribed the power, its exercise by this court will be continued, until it shall be otherwise instructed by an appellate tribunal. Hence I pass to the consideration of the other questions involved in this case.

The executor claims that he is a residuary devisee and legatee by virtue of the sixth clause of the will, which is

as follows: "I give and bequeath to Isaac F. Brown and Margaret Miller the remainder of my estate, to be equally divided between them, of both real and personal," and that, by virtue of this clause, he is entitled, on this accounting, to one half of the remainder of the fund, amounting to about $6,000, after the payment of the debts and general legacies. This claim is resisted on the ground that, as he was one of the two witnesses to the will, residing in this State and competent to testify, without whose testimony the will could not have been proved, he is precluded from taking any more than his distributive share of the personalty, or the share of the realty which would have descended to him in case the will had not been established (*2 R. S.*, *65*, §§ *50, 51*). These sections declare such a witness to be competent, and that he may be compelled to testify, so that other intended beneficiaries might not be deprived of what was sought to be given to them. I think the object of the law is two-fold; first, to render the subscribing witness competent, who would not have been so otherwise; and second, to guard against fraud in the preparation and execution of wills. The first is now perhaps obviated by recent statutes, but the latter remains. As the law now stands, he is generally, as a party, a competent witness, but the effect, as declared by section 51, is still the same, that section remaining unrepealed, and one of the reasons for its enactment still existing. Before the Revised Statutes were adopted, a devise to a subscribing witness to a will was wholly void (Sharpsteen v. Tillou, *3 Cow.*, *651*), and such subscribing witness could not testify on the probate. The cases cited by the learned counsel for the executor do not seem to me to be in point.

It is, however, objected that this court cannot pass upon the question, because it involves a construction of the will  Were the objection taken applicable, I should feel constrained to disregard it, for the reason that, in most cases, the court is compelled to construe wills, in order that it may obey the directions of the statute to distribute the surplus remaining "to and among the creditors, legatees," etc., "according to their respective rights, and to determine to whom it is payable, and the sum to be paid by reason thereof," etc.  But I do not deem this a case of construction at all.  We are not here groping after the meaning of the testator, who has used language that is obscure.  The court is simply asked to apply a plain provision of the statute, in order to determine to whom one half of the residue of the personal estate of the deceased is to be paid.  Applying this provision, it is determined that it must be paid to the next of kin of the testatrix, as prescribed by law for the distribution of intestates' estates, except that, in such distribution, the executor must be excluded, as he will already have received his full distributive share of the estate, as if she had died wholly intestate.

The executor's counsel insist that the will could have been properly proven without the testimony of Mr. Brown.  In this I think they are mistaken.  The law upon the subject will be found concisely stated in Redfield's "Law and Practice of Surrogates' Courts" (*2d ed., 202, et seq.*), and cases cited.

One William Orsor died in 1864, leaving him surviving, as his only heirs-at-law and next of kin, six brothers and sisters, and leaving a will, in and by which, among other things, he directed the residue of his real and personal

estate to be converted into money, and such money to be invested in good securities, for the benefit of his sisters, Deborah, Sarah and Matilda, during their natural lives, each to receive an equal share of the interest accruing thereon; and failed to make any disposition of the remainder. On the accounting of this same Isaac F. Brown, the executor of that will, it was ascertained and decreed that the fund so created amounted to $3,856.23, and the decree ordered the executor to invest it, and divide the interest between the three sisters equally. Subsequently Sarah, one of the three, died, leaving a will, of which said Brown was also executor. On his accounting in her estate, he charged himself with one third of the $3,856.23, as having received it, and the decree directed the balance of $4,088.99, found to be in his hands, after the payment of all claims, to be paid to him as her residuary legatee. That is presumed to have been done.

The question as to whether the provision for the three sisters, in William Orsor's will, was in conflict with the statute against perpetuities, was not raised; no appeal was taken from either decree, and their provisions must, therefore, in this proceeding, be regarded as binding upon the parties.

As, by the decree in the William Orsor estate, the fund was to be invested and the income to be equally divided among the three sisters as provided by the will, they became tenants in common of the income, and the survivor or survivors could not take the share of the income of any one who might die, but each survivor could receive only her one third (Strang v. Strang, *4 Redf.*, *376*), and as, by the decree in the Sarah Orsor estate, the principal of the fund producing her income was directed to

be paid to her residuary legatee, and as Matilda Orsor, the only survivor of the three, is still entitled to the income of one third, all that we have to deal with, in this proceeding, in this respect, is the principal of the fund which produced the income of Deborah Orsor. Her interest in it passed under her will, as it vested in remainder at once on his death in the next of kin of William, of whom she was one, and he, as to it, died intestate. Hence, it follows that, as Deborah left assets sufficient to pay all her general legacies, her claim on the fund as next of kin of William, with accrued interest, became a part of the residuum attempted to be given by her will to Isaac F. Brown and Margaret Miller, which bequest as to Brown being, as we have shown, void, except that he may take the share of her estate to which he would have been entitled had she died intestate (*2 R. S.*, 65, § 51; and Code Civ. Pro., § 1868), the residue, including interest from Deborah's death, must be equally divided among the other next of kin of the testatrix, as provided by the statute of distributions. This fund came into the hands of the executor of William Orsor, and as it, on Deborah's death, became a claim in his hands, as her executor, against the estate of William, he must be regarded as having collected it, and as now holding it as her executor.

I think the executor is chargeable with interest on the moneys drawn out of the savings banks and deposited with his own funds at the Sing Sing National Bank, except on the sums paid out as legacies. He supposed himself entitled to one half of the residuum, and acted innocently in the matter, but that will not excuse him from liability for interest to those having a legal right to

it; but I think it should be reckoned now at the rate of four per cent., only.

The executor, not being very accurate in the use of words, seems to have called legacy "dower" in the vouchers he took when he paid legacies. I am, therefore, inclined to receive them as sufficient; and, also, to allow the payment made to the guardian of the Finch children. If there is anything still due on account of the remainder of the dower interest of Ruhama Brown, deceased, the executor is still liable for it to him.

I do not regard the fact of the statute rendering the bequest to Brown void, by reason of his being a witness to the will, as in any manner affecting the bequest to Margaret Miller. The will is to be regarded as if one half of the residuum were given to her and the other half left undisposed of. Such seems to me to be the effect of the statute. There can be no difficulty in making the separation.

Thus the chief questions arising in the case are disposed of. Any others that may have been overlooked will, on attention being called to them, be disposed of on the settlement of the decree, of which at least four days' notice should be given. Costs of all parties to be paid out of the fund.

———————

PREPARATORY to settling the decree in this matter, applications were made for allowances, under the foregoing decision which awarded costs to all parties, out of the fund. Two counsel represented the executor on the trial,

each of whom presented an affidavit stating that twenty-seven days were spent in the matter. Each presented a bill of costs for $70, allowable in a case of contest, and for $270 as a *per diem* allowance. The items of disbursement, amounting to $66, were stated and verified in a separate paper.

The contestant's counsel presented an affidavit showing seventeen days occupied in the matter, of which six days were devoted to the trial upon the merits, and two days to the summing up of counsel. The disbursements claimed by the contestants, amounting to about $20, were likewise stated in a separate paper. No bill of costs, as such, was presented by either party, for taxation, and nothing was said by either, about stenographer's fees. On February 10th, 1883, the following opinion was filed:

N. H. BAKER *and* F. LARKIN, *for executor.*

CHAS. M. HALL, *for contestants.*

THE SURROGATE.—Costs can only be awarded to a party, and not to counsel or attorneys. If a party have a dozen counsel, he can be awarded no more costs than if he had but one. Under § 2561 of the Code, in case of a contest, the limit, which the Surrogate cannot exceed in awarding costs, is seventy dollars, and, in addition, ten dollars a day, less two, for each day actually and necessarily occupied in the trial upon the merits. The time which may have been spent by an attorney in preparing pleadings, making briefs, ascertaining facts, appearing merely when the case is, for any cause, adjourned, and appearing to settle the decree, can none of them be regarded as any part of the trial or hearing upon the merits,

for which a *per diem* allowance can be made, under that
section. But a summing up, or argument made to the
court must be regarded as a hearing upon the merits.

According to the affidavit presented on the part of the
contestants, six days were occupied in taking testimony,
and two days in summing up. The extent, therefore, of
costs which can be granted to the contestants, is $70, and
ten dollars a day, less two, for the trial or hearing upon
the merits, making $60—in all $130. Other compensa-
tion for services of that counsel, and he is doubtless en-
titled, for the faithful and zealous manner in which he
has labored, to much more, his clients must pay. The
rule is the same here, in this respect, as in the Supreme
Court. The statute prescribes and limits the amount of
costs as between party and party, or as between the par-
ties and the fund, which may be allowed. Beyond that,
the question of adequate compensation is between counsel
and client, as already stated.

The rule, as fixed by the above section, is precisely the
same as to executors and administrators, and they can be
allowed thereunder no greater compensation than may
be granted to the contestants; but, for reasons not neces-
sary to be considered here, they may, in addition, be
awarded, under § 2562, such a sum as the Surrogate
deems reasonable, for counsel fees and other expenses,
not exceeding ten dollars for each day occupied in the
trial, and necessarily occupied in preparing the account
for settlement, and otherwise preparing for the trial. In
order, therefore, that the Surrogate may be enabled to
act understandingly, in making an allowance under the
section first referred to, an affidavit should be presented
specifying the number of days occupied in the trial or

hearing upon the merits.   The affidavit presented on the part of the executor, should, in addition, state separately the number of days necessarily spent in preparing the account for settlement, and the number of days consumed in preparing for the trial.   The contestants' affidavit is sufficiently full, but those presented by the executor are too general and vague in this respect.   A gross number of days, it is stated, have been occupied in making up and preparing the accounts of the executor, in preparing for the trial, and in the actual trial.   The number of days occupied in each class of work should be stated.   It is true, there has been added, on suggestion, to the affidavit of one of the executor's counsel, a clause to the effect that, as near as he can ascertain, he has been actually engaged in the trial fourteen days.   This is an estimate, and is not so satisfactory as the positive affidavit on the part of the contestants, which shows that there were only eight days so spent.   I will, therefore, award the same sum to the executor, under § 2561, as to the contestants, namely, $130.   That is the utmost limit under that section.   But under the next section, the executor may be granted an allowance for the two days which are precluded by the former.   This I am disposed to do.   I am embarrassed, however, as to what allowance to make for preparing the account, and for otherwise preparing for the trial, as the affidavits do not, as already stated, furnish sufficient *data*.   The affidavits on his behalf, it is true, show twenty-seven days occupied in the matter altogether, while that on behalf of the contestants shows only seventeen.   How many were days when mere adjournments were had in the presence or absence of parties, does not appear.   However that may be, I am

inclined to think it will not be far out of the way to grant to the executor ten dollars a day for the two days referred to above, the same amount for two days in preparring the account, and also for three days in otherwise preparing for the trial. This will make altogether $200. The disbursements and expenses of the executor are fixed at $64.46; those of the contestants at $19.44, without regard to stenographer's fees.

It may be proper to remark, that, in all cases, a bill of costs, allowances and disbursements should be prepared, precisely as is the practice in the Supreme Court, and notice of taxation be given in the cases and manner required by that court. The stenographer's fees should be paid by the proper party, and the amount be included in the disbursements in his bill of costs, the same as if they were referee's fees, in the higher court.

Decreed accordingly.

---

THE decree made on the judicial settlement of the account of Isaac F. Brown, as the executor, etc., of the decedent, entered in February, 1883, directed him to pay to various next of kin of the deceased, of whom he was one, sums amounting to upwards of six thousand dollars, being the amount of a legacy attempted to be given by the will, to said Isaac F. Brown, individually, which bequest was held by this court to be void, and to be otherwise undisposed of by the will. Transcripts of the decree were obtained by some of those to whom the money was decreed to be paid, and judgments duly docketed in the county clerk's office. Mr. Brown, within the time fixed

by statute, filed a notice of appeal to the Supreme Court, from the decree, and at the same time filed an undertaking, with two sureties, in the sum of two hundred and fifty dollars only, which was duly approved by the Surrogate.   An application was made to the Surrogate to issue executions against the executor for the collection of several of the sums decreed to be paid, whereupon the following opinion was filed in May, 1883:

CHAS. M. HALL, *for the application.*

THE SURROGATE.—I think the application must be denied.   It is claimed that the appeal is made by the executor, as· such, and that, therefore, he must have given an undertaking in the amount directed by § 2580 of the Code, but the notice of appeal, filed in this office, discloses the fact that he appeals, not as executor, but as an individual—in fact, as an alleged legatee, and hence, it seems to me, the undertaking is sufficient under § 2577; but I do not deem it within the province of this court to determine that question.   The appeal was taken by the filing and serving of a sufficient notice, and by the filing of an undertaking, which may be sufficient or insufficient.   By those acts, the matter was removed from my jurisdiction, and I have no power, pending that appeal, to take any step in regard to it.   If the undertaking be deemed by the respondents insufficient to stay execution, application should be made to the appellate court to dismiss the appeal, and, if granted, this court would resume its power to enforce the decree.   On the other hand, under the same circumstances, the appellant could apply under section 1303, made applicable to this court by section 2575, for leave to file an amended undertaking.

At all events, I consider the case, at present, wholly removed from this court to a more exalted tribunal. I must, therefore, deny the application

Ordered accordingly.