## SURROGATE'S COURT.

In the Matter of the judicial settlement of the account of ISAAC F. BROWN, executor, &c., of DEBORAH ORSER, deceased.

*Jurisdiction of surrogate — Code of Civil Procedure, sec. 2743.*

Surrogates have power, under the Code of Civil Procedure, to hear and determine controversies in regard to the title to, or any question concerning a legacy or distributive share under a will.

*Westchester county, August* 1883.

DEBORAH ORSER died in 1879, leaving a last will and testament dated September 10, 1877. The will was prepared by Isaac F. Brown, a nephew, and the testatrix, after bequeath-.

ing various legacies, gave and bequeathed to said Isaac F. Brown and to Margaret Miller the residue of her estate, real and personal, to be equally divided between them. Said Brown was appointed one of the executors of the will, and was also one of the two subscribing witnesses to the execution of the same. At the time of said execution, and ever since, he has resided in the town of Ossinning, in this county, and so continues to reside. The will was proved in the surrogate's court of said county in March, 1880, and admitted to probate on the testimony of said Brown and the other subscribing witness.

The testatrix left her surviving no husband or descendant, and her only heirs-at-law and next of kin are a sister and several nephews and nieces, children of deceased brothers and of a deceased sister. On the filing of the executor's account of proceedings some questions were raised upon these facts and upon others which are sufficiently stated in the opinion.

*Francis Larkin* and *N. H. Baker*, for the executor.

*John G. Miller*, for Margaret Miller, one of the residuary legatees.

*Charles M. Hall*, for Mary Dubois and others, next of kin.

COFFIN, *S.* — As the next of kin claim that the provision of the will in favor of the executor is void by statute, and that they, as such, are entitled to their several distributive shares of the amount of the bequest attempted to be made to him, and as this claim is disputed by the executor, it becomes necessary to determine whether this court has, under the provisions of the Code of Civil Procedure, any jurisdiction in the premises. I do not perceive anything in the third sentence of section 2743 preventing me from passing upon the question. It strikes me that the words "distributive share" have been inadvertently inserted, as it is impossible to conceive how the validity of a distributive share can or cannot

be disputed. The sentence implies the existence of such share. If the share exist, it is because it is fixed by statute, and if it be disputed, it is disputing the statute. There seems to be no provision prohibiting the surrogate from determining a controversy as to whether a person claiming to be the owner of, and entitled to, a distributive share is so entitled. I think we have no right to interpolate words which would have the effect of depriving him of a power heretofore exercised. Striking out those words and he is simply deprived of the jurisdiction, as he has been hitherto, of trying the validity of a debt or claim which is disputed.

Section 71 of the Revised Statutes (93), and section 2743 of the Code, so far as this question is concerned, do not differ very materially. The former provided that the surrogate in his decree should settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, to whom it should be payable and the sum to be paid. The latter, that where the validity of a debt, claim or distributive share is not disputed, or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same. This, of course, means that the surrogate must determine all questions other than that of the validity of the debt, &c., and he is directed by his decree to determine to whom the same is payable and the sum to be paid. If there arise a question on either subject, surely his decree cannot determine it, unless he try to decide it. How, therefore, when there is a dispute as to a right to a distributive share, or as to the amount of any such share, can he escape or evade the duty of trying and deciding it? See *Riggs* agt. *Cragg* (89 *N. Y.*, 491), reported since this opinion was prepared.

The long controversy in the courts, as to the power of a surrogate to try a disputed debt or claim, was finally put at rest by the court of appeals in *Tucker* agt. *Tucker* (4 *Keyes*, 136), denying such power. That decision was based upon the reasoning of Harris, J., in *Magee* v. *Vedder* (6 *Barb.*, 352).

Matter of Brown.

That able jurist viewed all the statutory provisions relating to the mode of recovering debts against deceased persons, the notice to creditors, the presentation of debts or claims to the executors, and the provisions for reference in case of dispute, &c., and he pronounced the scheme of the revisers in that regard admirable.   It will be readily seen that there was and is no scheme as to legacies or distributive shares, no provision for publication, for presentation or for reference in case of dispute as to person or amount.

I am not aware that the power of a surrogate to determine a controversy as to the person of a legatee or distributee, or the amount to which either was entitled, has ever been questioned ; but the books are full of cases where it has been done and sanctioned by the appellate courts. · Even in *Magee* agt. *Vedder* the learned judge quoted, with strong expressions of approbation, the language of surrogate Ogden in regard to the power of a surrogate to try a disputed debt.   He said : " When, therefore, the seventy-first section declares that the decree of the, surrogate shall settle and determine all questions concerning any debt, etc., it does not mean that he is to determine the validity of the debts, but their priority, the amount due upon them, and to whom they belong, whether to the original creditor or to his assignee or his executor," etc.

Among other cases, showing a recognition by the higher courts of the power of the surrogate to try and determine the question of a right to a distributive share, I may mention the case of the will of Isaac M. Singer, where the sole question tried before me, and where some $15,000,000 was involved, was whether Mrs. Foster was his widow and entitled to a distributive share of his estate as such.   Able and distinguished counsel, among whom was a former judge of the court of appeals, resisted her claim upon the merits, and never questioned the power of the surrogate to try it.   The same case on appeal may be found under the title of *Foster* agt. *Hawley* (*reported in* 8 *Hun*, 68).   Again, in the matter of the estate of John A. Merritt, who died intestate, leaving assets amount-

Matter of Brown.

ing to over $1,250,000, the only question presented for determination was, who were entitled to distributive shares, it being decided by this court which of the numerous claimants were, and which were not entitled to such shares. The power of the surrogate to determine was not questioned by any of the astute counsel engaged, nor was such an objection raised in the appellate courts, the case being reported in 14 *Hun*, 551, under the title of *Adee* agt. *Campbell*, and also in 79 *New York*, 52. In *Hurton* agt. *Proal* (3 *Bradf.*, 414), the right of the uncle to a distributive share was disputed and was determined by the surrogate. Like jurisdiction was exercised by him in the case of *Doughty* agt. *Public Administrator* (3 *id.*, 151, 219 ; 4 *id.*, 28, *affirmed by court of appeals*, 23 *N. Y.*, 9). The same may be said of the case of *Hallett* agt. *Hare* (5 *Paige*, 315, 1835), and *Rose* agt. *Clark* (8 *id.*, 574, 1841).

It is, perhaps, unnecessary to mention other cases in order to show that it was the uniform and unchallenged practice of surrogates under section 71, sanctioned by the superior courts, to hear and determine such questions. Now, as I understand the rule as to construction of statutes, it is that where the law is settled by adjudications giving it a certain construction or effect, a mere change of phraseology made in a revision of it should not be deemed or construed as a change in the law, unless it evidently appears that such was the intention of the legislature (*Taylor* agt. *Delancy*, 2 *Cai. Cas.*, 143 ; *Goddell* agt. *Jackson*, 20 *Johns.*, 697, 722 ; *Matter of Brown*, 21 *Wend.*, 316).

It will be observed, in this connection, that the commissioner's notes to sections 2742-3 relate exclusively to the power of a surrogate to try a disputed claim against the deceased. No other meaning to the word " claim " is suggested there or in the decisions.

Another rule as to construction is, that a long and uninterrupted practice under a statute is regarded as good evidence of its construction (*Fort* agt. *Borch*, 6 *Barb.*, 60, 73 ; *based upon* 5 *Cranch*, 22).

It is quite apparent from the notes of the commissioners that the legislative intention was simply to conform the statute to the decision in the case of *Tucker* agt. *Tucker*, regarding a disputed debt. At most, these is nothing in the Code to forbid surrogates from deciding a controversy in regard to the title to, or any other question concerning a legacy or a distributive share, any more than there was in the Revised Statutes. It having, therefore, been the unbroken and unquestioned practice of the surrogates' courts for upwards of half a century to hear and determine such controversies, and the sections of the Code referred to having in no way circumscribed the power, its exercise by this court will be continued until it shall be otherwise instructed by an appellate tribunal. Hence I pass to the consideration of the other questions involved in this case.

The executor claims that he is a residuary devisee and legatee by virtue of the sixth clause of the will, which is as follows : " I give and bequeath to Isaac F. Brown and Margaret Miller the remainder of my estate, to be equally divided between them, of both real and personal," and that by virtue of this clause he is entitled, on this accounting, to one-half of the remainder of the fund, amounting to about $6,000, after the payment of the debts and general legacies. This claim is resisted upon the ground that as he was one of the two witnesses to the will, residing in this state and competent to testify, without whose testimony the will could not have been proved, he is precluded from taking any more than his distributive share of the personalty, or the share of the realty which would have descended to him in case the will had not been established (2 *R. S.*, 65, *secs.* 50, 51). These sections declare such a witness to be competent, and that he may be compelled to testify, so that other intended beneficiaries might not be deprived of what was sought to be given them. I think the object of the law is two fold ; first, to render the subscribing witness competent who would not have been so otherwise, and, second, to guard against fraud in the prepara-

tion and execution of wills. The first is now perhaps obvi-
ated by recent statutes, but the latter remains. As the law
now stands he is generally, as a party, a competent witness,
but the effect as declared by section 51 is still the same, that
section remaining unrepealed, and one of the reasons for its
enactment still existing. Before the Revised Statutes were
adopted, a devise to a subscribing witness to a will was wholly
void (*Sharpsteen* agt. *Tillon*, 3 *Cow.*, 651), and such subscrib-
ing witness could not testify on the probate. The cases cited
by the learned counsel for the executor do not seem to me to
be in point.

It is, however, objected that this court cannot pass upon
the question because it involves a construction of the will.
Were the objection taken applicable, I should feel constrained
to disregard it, for the reason that in most cases the court is
compelled to construe wills in order that it may obey the
directions of the statute to distribute the surplus remaining
" to and among the creditors, legatees," &c., " according to
their respective rights, and to determine to whom it is payable,
and the sum to be paid by reason thereof," &c. But I do not
deem this a case of construction at all. We are not here
groping after the meaning of the testator, who has used
language that is obscure. The court is simply asked to apply
a plain provision of the statute, in order to determine to whom
one-half of the residue of the personal estate of the deceased
is to be paid. Applying this provision it is determined that
it must be paid to the next of kin of the testatrix, as pre-
scribed by law for the distribution of intestates' estates, except
that in such distribution the executor must be excluded, as he
will already have received his full distributive share of the
estate, as if she had died wholly intestate.

The executor's counsel insist that the will could have been
properly proven without the testimony of Mr. Brown. In this
I think they are mistaken. The law upon the subject will be
found concisely stated in *Redfield's second edition of the Law
and Practice of Surrogates' Courts* (202 *et seq.*, and cases cited).

One William Orsor died in 1864, leaving him surviving, as his only heir-at-law and next of kin, six brothers and sisters, and leaving a will, in and by which, among other things, he directed the residue of his real and personal estate to be converted into money, and such money to be invested in good securities for the benefit of his sisters Deborah, Sarah and Matilda during their natural lives, each to receive an equal share of the interest accruing thereon; and failed to make any disposition of the remainder. On the accounting of this same Isaac F. Brown, the executor of that will, it was ascertained and decreed that the fund so created amounted to $3,856.23, and the decree ordered the executor to invest it and divide the interest between the three sisters equally. Subsequently Sarah, one of the three, died, leaving a will, of which said Brown was also executor. On his accounting in her estate he charges himself with one-third of the $3,856.23, as having received it, and the decree directed the balance of $4,088.99, found to be in his hands, after the payment of all claims to be paid to him as her residuary legatee. That is presumed to have been done.

The question as to whether the provision for the three sisters, in William Orsor's will, was in conflict with the statute against perpetuities, was not raised; no appeal was taken from either decree, and their provisions must, therefore, in this proceeding, be regarded as binding upon the parties.

As by the decree in the William Orsor estate the fund was to be invested and the income to be equally divided among the three sisters as provided by the will, they became tenants in common of the income, and the survivor or survivors could not take the share of the income of any one who might die, but each survivor could receive only her one-third (*Strong* agt. *Strong*, 4 *Red. R.*, 376), and as by the decree in the Sarah Orsor estate, the principal of the fund producing her income was directed to be paid to her residuary legatee, and as Matilda Orsor, the only survivor of the three, is still entitled to the income of one-third, all that we have to deal with in this pro-

Matter of Brown.

ceeding in this respect is the principal of the fund which reduced the income of Deborah Orsor. Her interest in it passed under her will, as it vested in remainder at once on his death in the next of kin of William, of whom she was one, and he, as to it, died intestate. Hence, it follows that, as Deborah left assets sufficient to pay all her general legacies, her claim on the fund as next of kin of William, with accrued interest, became a part of the residuum attempted to be given by her will to Isaac F. Brown and Margaret Miller, which bequest as to Brown being, as we have shown, void, except that he may take the share of her estate to which he would have been entitled had she died intestate (2 *R. S.*, 65, *sec.* 51, *and Code Civil Pro.*, *sec.* 1868). The residue, including interest from Deborah's death, must be equally divided among the other next of kin of the testatrix as provided by the statute of distributions. This fund came into the hands of the executor of William Orsor and as it, on Deborah's death, became a claim in his hands, as her executor, against the estate of William, he must be regarded as having collected it and as now holding it as her executor.

I think the executor is chargeable with interest on the moneys drawn out of the savings banks and deposited with his own funds at the Sing Sing National Bank, except on the sums paid out as legacies. He supposed himself entitled to one-half of the residuum, and acted innocently in the matter, but that will not excuse him from liability for interest to those having a legal right to it; but I think it should be reckoned now at the rate of four per cent only.

The executor not being very accurate in the use of words, seems to have called legacy "dower" in the vouchers he took when he paid legacies. I am, therefore, inclined to receive them as sufficient; and also to allow the payment made to the guardian of the Finch children. If there is anything still due on account of the remainder of the dower interest of Rubama Brown, deceased, the executor is still liable for it to him.

I do not regard the fact of the statute rendering the bequest

to Brown void, by reason of his being a witness to the will, as in any manner affecting the bequest to Margaret Miller. The will is to be regarded as if the one-half of the residuum were given to her and the other half left undisposed of. Such seems to me to be the effect of the statute. There can be no difficulty in making the separation.

Thus the chief questions arising in the case are disposed of. Any others that may have been overlooked will, on attention being called to them, be disposed of on the settlement of the decree, of which at least four days' notice should be given.

Costs of all parties to be paid out of the fund.