ORLEANS COUNTY.—HON. I. S. SIGNOR, SURROGATE.— August, 1884.

BOARD OF MISSIONS *v.* SCOVELL.

*In the matter of the judicial settlement of the account of the executor of the will of* LAURA ENSIGN, *deceased.*

Upon the judicial settlement of an executor's account, a Surrogate's court has jurisdiction to try and determine a question as to the meaning of the provisions of the decedent's will, so far as necessary to enable it to direct the distribution of the entire estate.

Testatrix, by her will, directed two fourths of the residue of her estate "to be divided equally between the home and foreign missions." The context furnishing no evidence tending to identify the intended recipients of this charity, the next of kin objected, upon the executor's accounting, that the provision in question was void for uncertainty.—

*Held*, that the case presented was one of latent ambiguity explicable by extrinsic evidence, including declarations of testatrix made after the execution of the will; and that, upon such evidence, the legacies belonged to the Boards of Home and Foreign Missions, respectively, of the Presbyterian church in the U. S. of America.

CONSTRUCTION of decedent's will, upon judicial settlement of the account of Thomas Scovell, the executor thereof.   The facts appear in the opinion.

E. W. TAYLOR, *for executor.*

JOHN G. SAWYER, *for claimants.*

C. J. CHURCH, *for Wm. Southworth.*

THE SURROGATE.—The testatrix, after giving certain legacies and making certain bequests, disposes of the rest and residue of her estate as follows:  "I also direct the money above· mentioned, rest and residue of my estate, both real and personal, to be divided into four equal parts; one fourth to go to the Home for the Friendless in the city of Lockport, also one fourth to go to the Home for the Friendless in the city of Rochester; the other two fourths to be divided equally between the home and foreign missions."

One of the next of kin of deceased appears upon this accounting, and claims that the bequest of two fourths of said residue to the "home and foreign missions" is void for uncertainty, and descends to the next of kin.   The bequest is claimed by "the Board of Home Missions of the Presbyterian church in the United States of America," and "The Board of Foreign Missions of the Presbyterian Church in the United States of America," as the corporations intended by the testatrix, in the expression, "home and foreign missions."

That the question of the meaning of the testatrix, and the construction of the will, so far as necessary to direct the distribution of the entire estate, is prop-

erly raised at this time, and is one which this court has jurisdiction to determine, is, I think, fully established (Matter of Brown, 65 *How. Pr.*, 387 ; Riggs v. Cragg, 89 *N. Y.*, 479; Code Civ. Pro., § 2472, *subd.* 3; § 2481, *subd.* 11).

In order to establish the claims of the two societies represented, to the legacies given to the "home and foreign missions," it was shown, upon the hearing, that the deceased was, and had been for a long time a member of the Presbyterian church of Holley, N. Y., where she resided, and that she attended that church ; that there were yearly collections taken in that church for the societies represented, and for no others, and when collections were taken for these societies their claims were presented by the pastor; and that she was in the habit of contributing to these societies. It also appears that there was a woman's auxiliary society connected with this church, and that she was at one time solicited to make her contributions through this society rather than through the regular church channels, but refused so to do. By the will, the testatrix also gave $1,000 to the Presbyterian church at Holley, and her house at that place for a parsonage, subject to the life estate of a niece. Thomas Scovell, executor of the will, was called as a witness, and by consent his testimony was taken, the question of its competency being reserved. He testified that, after the execution of the will, and shortly before the death of the testatrix, he read the whole will to her, and that, at that time, she gave him the key to the drawer and asked him to get the will and read it; that he read it

aloud in her hearing. The will was in her own hand-
writing; and when he came to the clause "home and
foreign missions," he said: "You should have desig-
nated the Presbyterian Board." She asked if she
could not put it in at that time. He told her: "No,"
it could not be done. She replied: "You know
that I am a Presbyterian and have given a thousand
dollars to the Presbyterian church at Holley, and my
house for a parsonage, after Fidelia is through, and I
want you to see that it goes to the home and foreign
missions of the Presbyterian church." No other
society or organization than those herein named have
appeared or made any claim to the legacies, nor is
there any evidence offered of the existence of any
other home or foreign mission society connected with
the Presbyterian church. The general rule that parol
evidence is inadmissible to explain or vary any
written instrument is applicable to wills as well as
other instruments. This rule is, however, subject to
certain exceptions. Where the object of the evidence
is to contradict the plain expression contained in the
will by showing that, though the testator named one
person or corporation, he did so by mistake supposing
that to be the correct name, as where the testator
gave a legacy to "The Seaman's Aid society in the
city of Boston" by mistake, intending the legacy for
"The Seaman's Friend society," supposing the name
of the former society to be the name of the latter,—
it was held that parol evidence could not be received
to correct the mistake (Tucker v. Seaman's Aid
Soc. (7 *Met.*, 188).

As stated in 1 Redf. on Wills, § 41, this case was

decided on the ground that, "although the intent of the testator is to govern in the construction, it must be the intent expressed by the will, and not the actual intent as shown by extraneous circumstances and proof;" and, as is there stated, I think the rule to be that "had there been but one society, and in attempting to describe that, some departure from the name had occurred, it might have been corrected by construction, since there was nothing else to answer the words of the will; but the case is otherwise where another person's name than the one intended is inserted in the will. That cannot be set right, but must prevail, the force of the written instrument being of paramount weight;" and, at § 39, page 565: "If there is anything in the words of the will which renders the bequest obviously more applicable to one object or subject than to any other, that must prevail, and no case for the admission of extrinsic evidence exists."

It has been repeatedly held that, where the name of a person or corporation is imperfectly stated, it may be aided by parol. In the case of the Domestic and Foreign Missionary Society's Appeal (30 *Penn. St.*, 425), the bequest was to the missions and schools of the Episcopal church about to be established at or near Point Cresson. The bequest was shown to have been intended for the Domestic and Foreign Missionary society of the Protestant Episcopal church of the United States. To the same effect is the well considered case, Lefevre v. Lefevre (2 *T. & C.*, 330 ; on app., 59 *N. Y.*, 434), where a bequest was made to "the American Home Mission Tract society for our

western missions;" and it appeared that there was no society of that name, but that the terms in the will applied in part to two existing societies—the American Tract society, and the American Home Missionary society—it was held that testimony that the testator was acquainted with the objects and operations of the American Tract society, and that their operations were carried on extensively in the western states through the agencies of colporteurs, and that the testator took a lively interest in the operations of the society, and contributed to its funds, and expressed a preference for this society— was admissible; and, on such evidence, it was held that those two societies were entitled to the bequest (1 Redf. on Wills, § 40, p. 587; *citing* Button v. Am. Tract Soc., 23 *Vt.*, 336).

Applying the rules thus laid down to the case under consideration, it seems clear that this is a proper one for the admission of extrinsic evidence to ascertain what the testatrix meant by the expression, "the home and foreign missions." Evidently, she meant two separate organizations or societies, as she gives two fourths of the rest and residue, to be divided equally between the home and foreign missions; and it seems clearly a case of latent ambiguity which may be explained by parol. The case of Leonard v. Davenport is a case similar in many respects to the one under consideration. The Board of Home Missions of the Presbyterian church in the United States of America was allowed to take a legacy bequeathed to "the Home Missionary society," and against the claim of the American Home

Missionary society, an unincorporated body, upon parol evidence that the testator was in the habit of contributing to the Presbyterian committee of Home Missions, was a member of the Presbyterian church with which that society was connected, that the claims of the society were presented in the church of which the testator was a member, and that he had spoken kindly of the efforts of that society (Leonard v. Davenport, 58 *How. Pr.*, 384). It is claimed, however, that the declarations of the testator can only be received where they are made prior to, or contemporaneously with, the execution of the will, and that declarations made afterward cannot be received, as the result might be to make a will entirely different from that which the testator intended. Redfield lays down the rule, after a consideration of many English and American cases, that, where there is a latent ambiguity, " any degree of latitude in regard to the admissibility of evidence to show the testator's intention either by his acts or declarations before, at the time of, and after the execution of the instrument is admissible" (§ 40, p. 591), and that, in such cases, such evidence is received merely in aid of the construction.

It is a general rule, sustained by the cases examined, that extrinsic evidence of the character offered in this case, and of declarations, made before the execution of the instrument, of the testator's intention to give a legacy to an individual or corporation, or a like declaration made at the time of execution, or a statement made by the testator after its execution, of the disposition he has made of his property, may be

received where it may aid in the interpretation of what is in the will, but not where it is offered as direct evidence of intent independent of the instrument. Here, the evidence is offered and received, not to show that the testatrix did not mean to give her property to "the home and foreign missions," or that she meant to give it to other corporations of different names, where there were corporations of the names used, actually in existence, but, it not appearing that there were any of the name mentioned, to explain what she meant by the terms used; to what bodies she applied the names "the home and foreign missions." The question is not one of intent outside the will, but of what was meant by expressions used in the will. From all the evidence, I think the testatrix clearly intended to give the legacies to the claimants, the Board of Foreign Missions of the Presbyterian church in the United States of America, and the Board of Home Missions of the Presbyterian church in the United States of America; and that, in the distribution of the estate, the executor should pay to each of the above named societies, respectively, one half of the amount directed to be paid to the home and foreign missions.

Ordered accordingly.