William and George Taylor, *Appellants*,
against
Ann Delancy, *Respondent*.

</div>

ON appeal from a decree of the judge of probates, on the following facts.

*John Taylor* died intestate, leaving a widow, three sons, *William*, *George* and *Charles*, and three daughters, *Ann*, the respondent, *Phœbe* and *Mary*. The widow having renounced the administration, the two daughters, *Phœbe* and *Mary*, united with their husbands in petitioning the surrogate to appoint *Ann* sole administratrix, she being the eldest child. Against this, *William* entered a *caveat*, claiming a right to be joined with her, which she denied. Whilst the *caveat* was pending, the four other children presented to the surrogate an *ex parte* paper, stating as objections to *William*, 1st. That he was so much engaged in commerce, as not to have time to attend to the estate. 2d. That the family could not, at all times, have access to him, which, if he was an administrator, would be inconvenient. 3d. That he was at variance with the other branches of the family, and his temper such as to promote discord rather than harmony. 4th. That they were persuaded, it would be his object and *interest*, to delay a settlement of the estate. 5th. Because the law does not favour joint administrations.

The surrogate, under these circumstances, decreed administration to be granted, exclusively, to

*The surrogate has a discretionary power to elect out of those of the next of kin to an intestate, any one in an equal degree, and grant to such person, sole administration.*

*Ann.* From this, *William* appealed to the judge of probates, and on the proceedings being transmitted, *George* petitioned to be united with any person, to whom the administration might be granted. His honour, having affirmed the decree of the surrogate, directed sole administration to *Ann*, on which, the case was now brought before this court.

*Henry*, for the appellants. This case brings up two questions. 1st. Whether a surrogate has a discretionary right to elect, among persons in equal degree, to whom he will commit administration ?— 2d. Whether, admitting this discretion, it has, on the present occasion, been duly exercised ? To determine the first point, it will be necessary to investigate the origin of the power, now conferred on the surrogate, in granting administration ; to trace from it its common law source, to the statute provisions in *England*, and mark the diversity in them, from the act of our legislature on the subject.

Antecedent to parliamentary provisions, the king, in cases of intestacy, as *parens patriæ*, was entitled to the goods of the deceased, in order to defray the expenses of his funeral, discharge his debts, and apply them to the benefit of his wife and children. If there were none, those goods, as a branch of the royal prerogative, constituted a part of his revenue, which he obtained possession of by his ministers, and most probably, through the medium of the county courts. At length, through the influence of ecclesiastical persons, the administration of intestates' effects was granted to the ordinary, who, after giving one-third to the widow and children, was imagined to dispose of the residue, or dead man's part, in *pios usus*, for the

benefit of his soul. The abuses, however, of the clergy, called for legislative interposition, and it was by the 31 *Ed.* 3. *c.* 11, enacted, that the ordinary should grant administration to the " next and most lawful friends" of the deceased. This was construed to mean such of the next in blood, as did not labour under legal disabilities. What those were, are specified in *Hensloe's case*, 9 *Rep.* 39, and *Toller's law of Exe.* 66. But the ingenuity of the churchmen attempted to narrow this right, by choosing from among those of the next of kin, him who would purchase the favour, or be most obsequious to them in the distribution. This power of election being a doubtful right, the 21 *Hen.* 8, *c.* 5, was passed, to confer it. By the words of the statute, the ordinary is empowered to grant administration to the widow or next of kin, or both " *as by the discretion of the same ordinary* shall be thought good. And in case, where divers claim the administration, which be in equal degree of kindred to the person deceased, and where any person only desireth the administration, as next of kin, where, indeed, divers persons be in equality of kindred, as is aforesaid ; that in every such case, the ordinary to be *at his election and liberty to accept any one or more* making request, where divers do require the administration." This statute is, by *Blackstone,*[*] termed an enlarging act. It was passed to give privileges to the church, and confirm that power of election, which they before used, though with some degree of distrust, of nominating the most pliable of the kindred, to the administration. It was a boon to the ecclesiastical

[*] 2 *Comm.* 496.

T

ALBANY,
February, 1805.

Taylor
v.
Delancy.

* 22 & 23 Car.
2. c. 10.

order. It was the abuse of it which induced the statute of distributions* to put an end to those frauds which had been practised under the former laws. After this plain history of the right of election in the ordinary to exclude some and prefer others to the office of administration, can it be argued that it was bestowed to avoid the inconvenience of joint administrations? It is not the result of common law principles, but the effect of positive institution; and if our act does not bestow the same discretion, it cannot exist. The words made use of by our legislature are, that administration of the estate of any person dying intestate, shall be granted " to the widow, or next of kin of the intestate, or some of them, *if they*, or any of them,

† 1 *Rev. Laws*, 318, *sec.* 5.

will accept the same."† These expressions do not vest the surrogate with a discretionary power to elect one of the next of kin solely, and in exclusion of those who " will accept the same." The sentence, if at full length, would read thus, " to the next of kin if they will accept the same, to some of them, if any of them will accept the same." Therefore, if all in the same degree accept the administration, the surrogate must grant it ; if, indeed, all do not choose to accept, then he may grant to some. The law is mandatory, and does not allow of any discretion. That this was the intention of those who framed and revised it, is evident, from comparing the phraseology of the old act, with that of the present day. By the former, the ordinary was empowered to grant administration "" to the widow or next of kin of the intestate, or to some, *or one of them*, if

‡ *Gain's folio edition.*

they or any, *or either* of them will accept the same."‡

No such words are to be found in our amended code, and it is not to be presumed they were rejected without reason. The sixth section of the act now in force, corroborates our positions. For it requires all the next of kin to be cited, in case any other person should apply for administration. Why cite them if all were not entitled ? No inconvenience can arise from the bonds required, because each administrator is allowed to find his own separate surety.—— As to the second point, we surely are justified in saying, though the surrogate may be entitled to the discretion he claims, he has, in the instance now before the court, abused it. Our system allows, it is true, to its judges, the exercise, in some instances, of their discretion ; but then it must be such a one as is sound and lawful, not arbitrary and capricious. Therefore, if once duly made use of, it can never be revoked, and administration granted to another ; for that would be arbitrary.—— 11 *Vin. Abr.* 114. *pl.* 10. (*n.*) Men, and even a mercantile character, have been passed by, to grant administration to a woman, whose education and very sex must be against the appointment. This last circumstance has been said, of itself, to be an objection, because, " she may marry, and so put herself and her goods under the power of another." 12 *Mod.* 619.* Should the court be of opinion with us, they will, therefore, grant the administration, as we suggest, to all who will accept; for, in cases of this sort, when the decision appealed from is set aside, the inferior tribunal is ousted of its jurisdiction, and the court which reverses, shall grant administration *de novo. Reeve* v. *Denny,* 11 *Vin. Abr.* 76. *pl.* 12.

ALBANY,
February, 1805.

Taylor
v.
Delancy.

* *Blackborough*
v. *Davis.*

ALBANY,
February, 1805.

Taylor
v.
Delancy.

1 Rev. Laws,
858. sec. 28.

*Harison and Van Vechten* contra. The rights of the appellants rest entirely on our statute provisions, and it is, therefore, unnecessary to travel back into the remote periods of ecclesiastical abuse. Antecedent to the general repeal* of the English acts of parliament those of *Ed.* 3. *and Hen.* 8. were in use here. When they were abrogated, it was not from any view inimical to their spirit, but to adopt the same principles under an act of our own. The existing act of the legislature is to be expounded according to the reason of the antecedent law, and never to be construed to repeal, further than that reason will justify. The discretion now practised by the surrogate has been sanctioned by a usage of years. Nothing but a clear intent ought, therefore, to abolish it, instead of the constructive alteration which the counsel for the appellant has laboured. By being authorised to grant to *some*, the surrogate is necessarily empowered to refuse to bestow on all. The words of the law clearly mean, that he may grant administration, to any, or any one of those who are next of kin, or to any one of them who will accept the same. When we look at the former law, which it was not intended to depart from, we can easily perceive that the "any" must signify any *one*, at his election. This power of election is indispensably necessary. Persons next of kin may be under disabilities, which would render it almost criminal in the surrogate not to reject. They may be bankrupts, or largely indebted to the intestate. Without a discretion, therefore, he could not do justice to the estate. But that appointing a woman should be an abuse of it is rather singular, when the legislature, in the case of a widow, direct it to be given to her. If we are correct in our idea of a dis-

eretion in the surrogate, the appeal cannot be maintain-ed. From the use of discretionary powers there is none. It is contrary to their nature. On applications for new trials, setting aside defaults, rehearings in chancery, allowing or directing informations in the nature of a *quo warranto*, no exception can be taken, or writ of error brought. They may, indeed, be subjects of criminal proceeding, by indictment or impeachment, but never can be the groundwork of appeal or error. The *argumentum ab inconvenienti* is conclusive against the right. An instance has very lately occurred in the city of *New York* of a death where the next of kin consisted of 150 persons, all in the same degree. This alone is sufficient to affirm the decree below.

*Pendleton*, in reply. We must construe the clause in our statute distributively. To the next of kin, if they will accept, or some of them if they will, or any them if they will accept the same. It is a positive law, and however inconvenient, it is not with this, or any other court, to repeal it.

*Per curiam*, delivered by SPENCER, J. The appellants' counsel have insisted, 1st. That under the 5th section of the act, "relative to the court of probates, the office of surrogate, and the granting of administrations," there is no discretion vested in the surrogate, to select one of the next of kin in equal degree, where they all request administration, and are under no legal disability. 2d. That in this case, if such discretionary power is given by the act, it has been so exercised as to require correction by this court.

The only legislative provisions on the subject, are to be found in the acts of the 14th of *February, 1787*,

ALBANY,
February, 1805.

Taylor
v.
Delancy.

and the 27th of *March*, 1801. The former of these statutes directs, " that where any person dieth intestate, the widow, or next of kin, *or any of them*, of the deceased person if they, or either of them, will accept the same, &c. shall be deputed." The latter statute ordains, " that administration of the goods, and chattels, and credits of any persons dying intestate, shall be granted to the widow, or next of kin of the intestate, or some of them, if they, or any of them, will accept the same." These acts are of the description of revised laws, and if susceptible of doubt in their interpretation, resort must be had to the law existing antecedently. By the constitution, the British statute of the 21st *Hen.* 8. regulating the granting of administrations was adopted and recognised as the law of the state. The 35th article of the constitution, ordains, that such parts of the common law of *England*, and of the statute law of *England* and *Great Britain*, and of the acts of the legislature of the colony, as together did form the law of the said colony, on the 19th of *April*, 1775, should be and continue the law of this state, subject to such alterations and provisions as the legislature should from time to time make concerning the same. The statute of the 21st *Hen.* 8. became thereby the law of the state, and the 5th chap. 3d and 4th section of that statute in express terms, gave to the ordinary a right to accept one or more administrators when there was an equality of kindred, according to his discretion. The revisors of the laws in 1787, well knew that this statute vested a discretion, and still we find no terms made use of negativing that discretion, or purporting to change the law. So far from this, it appears to me

that the words " or any of them," in the act of 1787,

if they were now to receive a construction for the first time, confer a discretion on the surrogate. My opinion is founded on this proposition, that where the law, antecedently to the revision was settled, either by clear expressions in the statutes, or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention in the legislature to work a change. A contrary construction might be productive of the most dangerous consequences. The quaintness of expression in some of the ancient British statutes, the circumstance of there being several statutes on the same subject, required in many cases, an entire change of language, but it has never, until now, been contended, that thereby an alteration of the law was to be inferred.

If this was a case wholly depending on the statutory provision, of the act of the 27th of *March*, 1801, (and to this as a revised law, the same observations are applicable, as have been made in relation to the statute of the 14th of *February*, 1787,) I should incline to the opinion, that the words, " or any of them," would vest a discretionary power in the surrogate, of making an election between those in equal degree. If, however, the words are doubtful, arguments from inconvenience would have a decisive and conclusive influence. Nothing could be more absurd than to require the surrogates to confer the right of administering on all who are next of kin, and who may desire it, when their numbers, their residence, their personal qualifications would, in prudence, require their exclusion. I am, therefore, clearly of opinion,

that the surrogate had a discretionary power of selecting one to the exclusion of others, by which I mean a sound legal discretion not founded in whim or caprice.

As to the second point, whether the abuse of discretion is a ground of relief here. I am not disposed to say, that there may not be cases where the exercise of a discretion in an unjust and illegal manner, would not be re-examinable and relievable. Of this there may be a doubt, and in the case of *Preston and others* v. *Ferrard*, 2 *Bro. Pa. Ca.* 179, the house of lords affirmed the chancellor's order, on the ground that the act of 2d of *Anne*, had conferred on him a discretionary power to appoint guardians to the children of Romam Catholics. Without expressing a decided opinion on this point, it appears to me that the present case furnishes no facts from which the court can perceive an abuse of discretion. It is to be intended, that all decrees, solemnly pronounced, are just, until the contrary appears. The surrogate may have had good reasons to guide his discretion, of which we are not connusant. Neither of the parties, from any proofs in this cause, appear liable to any objection, except that the respondent is a female; and this has been urged as one. It is a sufficient answer, to say, that the statute makes no discrimination as to the sexes ; and certainly, the court cannot consider that an objection, which the legislature have not. In my opinion, the decree appealed from ought to be affirmed.

Decree of affirmance.