CHRISTINA C. WHITNEY, RESPONDENT, v. EMILY WHITNEY, MARY W. LAWRENCE AND JENNIE WHITNEY, APPELLANTS, IMPLEADED WITH OTHERS.

63    59
3ap 48

63    59
f45ap 52

63h        59
j 71 AD 3351
63h        59
e 76 AD1 205

*When the remedy is at law, and not in equity, to recover land — Code of Civil Procedure, sec. 1866 — devise or legacy by implication — "personal necessities" construed — will construed in favor of issue of deceased child.*

Where a party holds, or claims to have, a purely legal estate in land, and simply seeks to have his title adjudicated upon, or to recover possession against an adverse claimant, who also relies upon an alleged legal title, there being no equitable feature of fraud, mistake or other fact, calling for the application of equitable doctrines, or the granting of peculiar equitable relief, the remedy at law is adequate and the concurrent jurisdiction of equity does not exist.

Section 1866 of the Code of Civil Procedure has not changed this rule.   (MERWIN, J., dissenting.)

*Town of Mentz* v. *Cook* (108 N. Y., 504) distinguished.

Where a will contains no express devise of a farm, but its provisions, when construed in the light of the circumstances surrounding the testator when it was made, show that it was his obvious intent that one of his children should have the whole benefit of the farm, there is thereby created a devise by implication.

A legacy although not given in express terms, will arise by implication where the words of the will leave no doubt as to the testator's intention, and can have no other reasonable interpretation.

The words "personal necessities" in a will, held to be used in the sense that the property should be used for the support and maintenance of the beneficiary and his family, if he should have one, rather than to permit the use of it in business or for speculative purposes, and not in a sense in which such words would be synonymous with "individual necessities."

Where a will is capable of two constructions, one of which will exclude from the benefit of its provisions the issue of a deceased child, and the other of which will include such issue, the latter construction should be adopted.

APPEAL by the defendants, Emily Whitney, Mary W. Lawrence and Jennie Whitney, from a judgment of the Supreme Court, entered upon the report of a referee adjudging the title to certain real estate to belong to and be vested in fee in certain persons named in said report, which judgment was entered in the office of the clerk of the county of Broome on the 6th day of April, 1891.

The complaint alleged that on the 20th day of February 1844, Joshua Whitney made his last will and testament in due form of law to pass real and personal estate; that he died at Binghamton, N. Y., on the 13th of April, 1845, leaving said last will and testament, without having revoked or altered the same; that said will was duly proved and admitted to probate pursuant to law on the 4th of April, 1855, as a will of real and personal property, and letters testamentary were duly granted to Thomas G. Waterman, Franklin Whitney and Washington Whitney, who duly qualified as such executors and assumed the execution of the will; that all of said executors have since died; that George Whitney, named in said will, died in the year 1863, and the defendants George Whitney, Rhoda Whitney and Charles W. Keeler were entitled to whatever interest in the estate of the testator said George Whitney would have been entitled to as residuary devisee if living; that Franklin Whitney, named in said will, died before the commencement of this action, and the defendants Jane C. Haskins, Pamelia W. Rogers, Caroline

W. Ronk, Fannie C. W. Smith and the plaintiff were his children, and entitled to whatever interest in the estate of said testator Franklin Whitney would have been entitled to as residuary devisee if living; that Washington Whitney, named in said will, died before the commencement of this action, and the defendants Franklin Whitney, Rufus P. Whitney, Henry J. Whitney, Frederick A. Whitney and Frank H. Whitney were entitled to whatever interest in the estate said Washington Whitney would have been entitled to as residuary devisee if living; that Pamelia W. Waterman, named as one of the four beneficiaries in the residuary clause of said will, died before the commencement of this action, and her heirs and next of kin, on or about August 12, 1867, assigned and released their interest, right and title in the estate of said testator to the other residuary devisees and legatees, or to their representatives; that Emily Whitney is the widow of Charles Whitney, who died on or about the 26th of April, 1885; that Washington Whitney, named as trustee in said will of the Conklin farm, died on or about the 14th of March, 1875, and during his lifetime did not convey any portion of said farm; that the defendants Mary Lawrence and Jennie Whitney were the children of Charles Whitney, and, with the defendant Emily Whitney, are in possession of the Conklin farm, and have been since the death of Charles Whitney, and are receiving the use, rents and avails of the same; that, upon the death of Charles Whitney, the Conklin farm, not having been disposed of by Washington Whitney, passed to the representatives or successors in interest of the residuary devisees under said will; that the defendants named as representing or being successors in interest to said George Whitney, deceased, are entitled to one-third of said farm; that the plaintiff and the defendants named as representing or being successors in interest to said Franklin Whitney, deceased, are entitled to one-third of said farm; that the defendants named as representing or being successors in interest to Washington Whitney, deceased, are entitled to the remaining one-third interest in said farm; that the defendants Emily Whitney, Mary Lawrence and Jennie Whitney, being in possession, claim to be entitled to and to own said farm.

The plaintiff demanded judgment for a construction of said will, and that the farm be decreed to belong to the representatives or successors in interest of the residuary devisees named in said will,

and that the defendants Emily Whitney, Mary Lawrence and Jennie Whitney be perpetually enjoined from impeaching or otherwise making any claim in contravention of such judgment or decree.

The defendants admitted many of the allegations of the complaint, but denied that upon the death of Charles Whitney the Conklin farm passed to the representatives or successors in interest of the residuary devisees under said will. They also alleged that the plaintiff had not the right to maintain this action, that the complaint did not state a cause of action, that by the terms of the will all the beneficial interest in said farm was vested in Charles Whitney, and upon his death descended to his heirs or personal representatives. They also set up the statute of limitations.

The evidence disclosed that Joshua Whitney, then of the village of Binghamton, Broome county, N. Y., made his last will and testament, under his hand and seal, in due form to pass real and personal estate, which was dated February 25, 1844, of which the following is a copy :

"I, Joshua Whitney of Chenango, Broome county and State of New York, do make my last will and testament in the manner and form following, that is to say :

"I give, devise and bequeath unto my wife Julia and Mary my daughter, the balance now remaining of my homestead or farm, containing about one hundred and fifty acres, including the land and premises now occupied by Whitney and Doolittle, also the buildings and lots parts of said farm, and as at present either under contract or lease, together with all my household furniture, farming tools, live stock, farming produce either harvested or growing at my decease, carriages, sleighs and harnesses. The real property to be held by them as tenants in common until the death of my wife, when the real as well as personal property before described shall be equally divided between my daughter Mary and Franklin Whitney in fee, but inasmuch as my wife may prefer receiving, in lieu of the provisions aforesaid, a fixed annual sum of money ; now it is my will that if my wife shall agree with my son Franklin to pay her in lieu of the provisions aforesaid a fixed annual sum of money, and shall fully enter into and complete such agreement, then it is my will that the said real and personal property, shall forthwith be vested in my said son Franklin and daughter Mary, one-half to each in fee.

The above devise and bequest to my wife, is in lieu and in full for her right of dower in my estate.

" I give and devise to Washington Whitney the Conklin farm of about one hundred and sixty acres, being the east part of lot No. 2, Bingham's patent, S. S. Susquehanna river, occupied at present by Whitney and Conroy, the same to be held in trust, that is to say, after the expiration of the present lease to William Whitney, recently made, he the said Washington may either lease the same, or if he should think best, may sell or dispose of it, and to pay over to my son Charles the rent, interest or avails of said farm in such sums as he, the said Washington, may deem most prudent to meet the personal necessities of the said Charles, and to guard against his improvidence. It is, however, my will that if Charles should return home and become steady and wish to occupy said farm, the said Washington may, if he thinks best, convey the same to the said Charles.

" Having heretofore advanced to my son Virgil Whitney in lands, moneys, etc., what I consider to be his just share in my estate, I, therefore, do not make any devise or bequest to him in this my last will and testament.

" Having also, heretofore, advanced to my son Vincent Whitney in lands, what I consider to be his just share of my estate, I, therefore, do not make any devise or bequest to him in this my last will and testament.

" Having also, heretofore, advanced to my son Joshua Whitney in lands, money, etc., what I consider to be his just share of my estate, I, therefore, do not make any devise or bequest to him in this my last will and testament.

" I give and bequeath to the heirs of William Whitney, deceased, all advances made him in his lifetime, and also two thousand acres of land on St. John's river, Florida, formerly owned by said William.

" I hereby appoint Thomas G. Waterman, Franklin Whitney and Washington Whitney my executors of this my last will and testament; I give, devise and bequeath unto my said executors the survivor or survivors of them, and to their heirs and assigns, all the residue of my property, real, personal and mixed, wheresoever situated in trust, and for the uses and purposes hereinafter expressed, that is to say, in trust that they, the said executors, the survivor or

survivors of them, shall as soon as may be after my decease, collect, sue for and recover the money or moneys due or owing or which shall thereafter become due by reason of any bonds, debts and demands; and to sell and dispose of all my real estate, wheresoever situated, and every part and parcel thereof, and convert the same as soon as conveniently may be, into ready money, for the uses and purposes hereinafter mentioned; and on such sale or sales to make and execute to the purchaser or purchasers all necessary assignment or assignments, writings or deeds to the same purchaser or purchasers, and to their several heirs or assigns, as may be proper and necessary for the purpose of giving to them, or any of them, the legal and equitable right and claim to the same, and every part thereof. And I do further direct that when all the above recited property shall be sold, disposed of and converted into ready money, in the manner above directed, or otherwise, which may or shall remain after the payment of my just debts and necessary expenses, shall be divided in just and equal proportions, share and share alike, between the following of my children, to wit: Unto Pamelia Waterman, George Whitney, Washington Whitney and Franklin Whitney, after deducting from the share or proportion of each the sums which they have, respectively, received of me for their advancement in the world, to wit: from the share of Pamelia Waterman, seven thousand dollars for farm-house in village, furniture hitherto given, and the one-fourth part of the spring property; from the share of George Whitney, the sum of three thousand five hundred dollars for farm on which he now lives; from the share of Washington Whitney, the sum of four thousand dollars for the farm where E. Brown now lives, and goods had of J. Whitney & Son; from the share of Franklin Whitney, the sum of five thousand dollars for goods and village property, also fifty acres of land of lot No. 7 and part of Cook's bond. I do hereby authorize the said executors, if they should think best, to divide among the said heirs in just and equal proportions, as heretofore mentioned, all and singular the real and personal property so devised and bequeathed to the said executors, in trust, after paying, as before mentioned, all my just debts and necessary expenses.

"I, Joshua Whitney, do hereby revoke all wills by me before at any time made.

" In witness whereof, I have hereunto set my hand and seal this 26th day of February, one thousand eight hundred and forty-four.

"JOSHUA WHITNEY. [SEAL.]"

The testator died on the 13th of April, 1845. His will was duly admitted to probate and letters testamentary duly granted to the executors named therein, who qualified as such and entered upon the duties of their trust. All of the executors named in said will died before the commencement of this action. The testator left him surviving Charles Whitney, a son, who is mentioned in the will, and who was, at the death of the testator, thirty years of age, unmarried, of unsteady habits, away from home, and occasionally drank intoxicating liquors to excess. In 1851 Charles married the defendant Emily Whitney. Charles Whitney died intestate on the 26th of April, 1885, leaving the defendant Emily Whitney his widow, the defendants Mary Lawrence and Jane O. Whitney, who are his only heirs-at-law and next of kin, both of whom were over the age of twenty-one years. In 1854 Charles Whitney returned home and wished to occupy the Conklin farm, and with the consent of Washington Whitney, the trustee named, moved upon the farm with his family and resided there until the year 1870 or 1871, when the house was burned and he moved elsewhere. From 1854 to 1885, the time of his death, he controlled the farm and received the income and rents therefrom. Since 1879, and during her father's lifetime, Mary Lawrence contributed to the support of her father and his family an amount which nearly equaled the value of the farm in question, and with the improvements made by her exceeded its value. Washington Whitney, the trustee named in said will, died about the 14th of March, 1875, and did not during his lifetime convey the Conklin farm. The 18th of March, 1875, Stephen C. Millard was duly appointed trustee in the place of Washington Whitney, deceased. Millard never conveyed this farm. The funeral expenses of Charles Whitney, amounting to $125, remain unpaid. The appellants were in possession of the farm, and have been since the death of Charles Whitney. The farm consists of about one hundred and sixty acres and is worth about four thousand dollars

Most of the foregoing facts were found by the referee, and as conclusions of law he held :

HUN --VOL. LXIII     9

" *First.* That the said ' Conklin Farm ' is vested in and belongs to the representatives or successors in interest of said residuary devisees, namely : To each of the defendants, George Whitney, Rhoda Whitney and Charles W. Keeler, one-ninth thereof ; to each of the defendants, Jane C. Haskins, Pamela W. Rogers, Caroline W. Ronk, Fannie C. W. Smith and the plaintiff, Christina C. Whitney, one-fifteenth thereof ; to each of the defendants, Franklin Whitney, Rufus P. Whitney and Henry J. Whitney, one-twelfth thereof ; to the defendant, Fred. A. Whitney, one thirty-sixth thereof, and to the defendant, Frank H. Whitney, one-eighteenth thereof.

" *Second.* That the funeral expenses of Charles Whitney, deceased, amounting to about the sum of one hundred and twenty-five dollars, with interest thereon from the 26th day of April, 1885, are a lien and charge upon said ' Conklin Farm,' and should be paid out of the avails thereof.

" *Third.* That the plaintiff is entitled to judgment and decree perpetually enjoining and restraining the defendants, Emily Whitney, Mary Lawrence and Jennie Whitney, from impeaching or otherwise making any claim in contravention of such judgment and decree, or from making any claim to said ' Conklin Farm ' or premises, or the rents, issues and profits therefrom.

" *Fourth.* That the plaintiff is entitled to a judgment for the appointment of a receiver of said ' Conklin Farm ' or premises, its issues, rents and profits, and to take possession thereof and deliver the same to the plaintiff and the defendants named in the first conclusion of law herein, together with her costs and disbursements of this action to be taxed by the clerk of Broome county, N. Y., and paid out of said ' Conklin Farm ' or the avails thereof, but without costs against the defendants, Emily Whitney, Mary Lawrence and Jennie Whitney, and judgment is hereby ordered accordingly."

The appellants requested the referee to find :

" 1. That had the value of said farm, and the rents, issues, profits and avails thereof been paid over to said Charles Whitney after the death of said Joshua Whitney, in such sums as to meet the personal necessities of said Charles, the whole value of said farm would have been required and paid over to said Charles before his death ;

" 2. That upon the death of Charles Whitney all beneficial inter-

est in said farm passed to the defendants, Mary W. Lawrence, Jane O. Whitney and Emily Whitney;

" That upon the death of Charles Whitney all of the beneficial interest in said farm passed to the defendants Mary W. Lawrence and Jane O. Whitney, subject to whatever rights therein the defendant, Emily Whitney, acquired therein upon the death of Charles Whitney, as the widow of said Charles;

" 4. That the said farm did not pass, and has not passed under the residuary clause in said will;

" 5. That no interest in said farm passed under the residuary clause in said will;

" 6. That the residuary clause in said will is void as a trust, and no title to real estate passed under the residuary clause in said will;

" 7. That the plaintiff is not entitled to maintain an action for the construction of the will in question;

" 8. That the twenty years' statute of limitations is a bar to the maintenance of this action by the plaintiff;

" 9. That the ten years' statute of limitations is a bar to the maintenance of this action by the plaintiff;

" 10. That the statute of limitations is a bar to the maintenance of this action by the plaintiff;

" 11. That, by adverse possession, the title of the defendants in said farm has become absolute;

" 12. As a question of laches, the court should refuse to entertain this action."

The referee refused to find as thus requested, and to such refusal the appellants duly excepted. They also excepted to the conclusions of law made and filed by said referee, and to each of such conclusions.

There is nothing in the appeal-book or judgment-roll to show that the summons in this action was served upon any of the defendants except the appellants. On the trial, however, all the defendants, except the appellants, appeared by George Whitney as their attorney, and he also appeared as attorney for them as respondents upon this appeal.

*A. D. Wales*, for the appellants.

*F. F. Williams*, for the respondent, plaintiff.

*George Whitney*, for the respondents, defendants.

MARTIN, J. :

At the threshold of this investigation the question is presented, whether this action can be maintained. The action was, in form, an action in equity to obtain a construction of the last will and testa-·ment of Joshua Whitney, deceased, but its manifest object and purpose was to determine the legal title to certain real estate which was in the possession of the appellants. The appellants contend that, as the questions involved related to real estate only, and did not include the consideration of any existing trust, this suit cannot be maintained. It is quite obvious that while the determination of this case may have involved to some extent the construction of Joshua Whitney's will, still, such construction was necessary only to the extent of determining who had the legal title to the real estate in question, and involved no question as to any existing trust.

Whether, under such circumstances, a suit in equity can be maintained for the construction of a will and the determination of the title to the real property claimed under it, where the questions involved could be determined in an action at law to recover the possession of the premises, is the precise question we are called upon to determine.

The question, under what circumstances such a suit might be maintained, was somewhat discussed in *Bowers* v. *Smith* (10 Paige, 193), and in that case Chancellor WALWORTH said : " I am not aware of any case in which an heir-at-law of a testator, or a devisee, who claims a mere legal estate in the real property, where there was no trust, has been allowed to come into a court of equity for the mere purpose of obtaining a judicial construction of the provisions of the will. On the contrary, the decision of such legal questions belongs exclusively to the courts of law, except where they arise incidentally in this court in the exercise of its legitimate powers ; or where the court has obtained jurisdiction of the case for some other purpose."

Again, in *Post* v. *Hover* (33 N. Y., 602), DENIO, Ch. J., said : " The plaintiffs had no right to institute this suit to settle the construction of the will. They were, at best, only heirs-at-law of the testator, and if the devise of the homestead was void, as they contend, they had only to bring their direct action in the nature of ejectment to recover their shares in the premises. (*Brown* v. *Smith*, 10 Paige, 193). ·Although the Supreme Court has general jurisdic-

tion at law and in equity, it cannot entertain an action for equitable relief where such an action could not have been sustained in a court of equity, though they might have sued at law in another form of action."

Judge Folger, in *Bailey* v. *Briggs* (56 N. Y., 413), had the same question under consideration and stated the rule as follows: "It is when the court is moved in behalf of an executor, trustee or *cestui que trust*, and to ensure a correct administration of the power conferred by a will, that jurisdiction is had to give a construction to a doubtful or disputed clause in a will. The jurisdiction is incidental to that over trusts." The rule, as stated by Judge Folger, was expressly approved by the court in *Chipman* v. *Montgomery* (63 N. Y., 230), and Allen, J., said: "It is by reason of the jurisdiction of the Court of Chancery over trusts that courts having equity powers as an incident of that jurisdiction, take cognizance of and pass upon the interpretation of wills. They do not take jurisdiction of actions brought solely for the construction of instruments of that character, or when only legal rights are in controversy." The same rule was recognized in *Monarque* v. *Monarque* (80 N. Y., 321).

In *Dill* v. *Wisner* (88 N. Y., 153) it was held that an executor could not maintain an action for the construction of a clause of a will disposing of real estate, unless he was invested with a trust under the will in reference to the subject-matter of the devise.

Again, in *Wager* v. *Wager* (89 N. Y., 161), it was held that an heir-at-law or devisee, who claims a mere legal estate in real property when there is no trust, cannot come into a court of equity for the mere purpose of obtaining a judicial construction of the provisions of the will.

The question was also considered in *Weed* v. *Weed* (94 N. Y., 243), and Andrews, J., stated as the rule that "a devisee, who claims a mere legal estate in real property of the testator, where there is no trust, cannot maintain an action for the construction of the devise, but must assert his title by ejectment or other legal action, or if in possession must await an attack upon it and set up the devise in answer to the hostile claim."

That the foundation of jurisdiction in such a case rests on the jurisdiction which a court of equity has over trusts was again recognized in *Horton* v. *Cantwell* (108 N. Y., 267).

In *Anderson* v. *Anderson* (112 N. Y., 110), it was said by PECK-HAM, J.: "The jurisdiction of courts of equity in considering doubtful or disputed clauses in a will has been held with entire uniformity by the courts of this State to result from its jurisdiction over trusts, and that exists only when the court is moved on behalf of an executor, trustee or *cestui que trust* and to enforce a correct administration of the power conferred by the will." After citing *Weed* v. *Weed* (*supra*), and stating the doctrine there held, the judge says: "It is true that was an action for the construction of certain clauses in a will and hence is not directly in point here. But it shows the tendency of the court to continue in the same path it has tread for many years, by denying jurisdiction in equity in matters regarding wills separated from trusts and to send to the legal branch of the court questions of that nature for determination."

This review of the authorities discloses that from 1843 until 1889 the highest courts and the most eminent judges of the State have uniformly held that an action in equity for the construction of a will could be maintained only by virtue of its jurisdiction over trusts; and that such jurisdiction does not exist except where the action is brought by an executor, trustee or *cestui que trust* to enforce a correct administration of the powers conferred by the will. While it has been held that where a trust existed, and a suit in equity was brought to enforce the execution of it, the court having thus acquired jurisdiction might in such a suit construe a will and determine such legal questions as might incidentally arise; still no such jurisdiction has been held to exist except where the purpose of the action was to enforce the trust contained in the will.

Certainly this action was not brought to enforce the execution of any trust contained in the will of Joshua Whitney. The learned referee has held that the trust created by the will was fully executed, and that the power in trust to sell the premises or convey them to Charles terminated with his death, hence there could have been no trust, or power in trust, which could have been enforced. The clear and manifest purpose of this suit was to establish the rights of the plaintiff and the defendants, other than the appellants, to the premises in question. The rights claimed were as successors in title to the residuary legatees. Those were merely legal rights, and if the

doctrine of the authorities cited is to control, should be enforced as such by an action of ejectment or other legal action. The doctrine of the cases cited requires us to hold that this action cannot be maintained unless sufficient authority to justify such an action is given by section 1866 of the Code of Civil Procedure.

The respondents contend that that section directs the exercise of jurisdiction in such a case, even though no trust is involved. Its provisions, so far as applicable to this question, are: " The validity, construction or effect, under the laws of the State, of a testamentary disposition of real property situated within the State, or of an interest in such property, which would descend to the heir of an intestate, may be determined, in an action brought for that purpose, in like manner as the validity of a deed purporting to convey land may be determined. The judgment in such an action may perpetually enjoin any party from setting up or from impeaching the devise, or otherwise making any claim in contravention to the determination of the court, as justice requires."

They also cite *Tiers* v. *Tiers* (32 Hun, 184; 98 N. Y., 568); *Jones* v. *Jones* (1 How. Pr. [N. S.], 510); *Drake* v. *Drake* (41 Hun, 366); *Snell* v. *Tuttle* (44 id., 324); *Adams* v. *Becker* (47 id., 65) and *Read* v. *Williams* (125 N. Y., 566) as sustaining their contention.

In the case of *Tiers* v. *Tiers* the question under consideration was not involved. While the court states in its opinion that the action was brought under the authority of section 1866, it does not appear that any objection to the form of the action or the jurisdiction of the court was raised or determined. In *Jones* v. *Jones*, which was a Special Term decision, it was held that section 1866 had changed the law as it existed prior to the adoption of that section, and that under it an action between devisees for the construction of a will might be maintained. In *Drake* v. *Drake* it was held that under the rule established in *Weed* v. *Weed* (*supra*), the action could be maintained, as it involved an important trust, and that the execution of that trust called upon the court for the exercise of its equitable jurisdiction. We do not find that this question was involved in *Snell* v. *Tuttle*. No such question seems to have been raised. In *Adams* v. *Becker* it was held that the rule had been changed by section 1866, and that under the provisions of that section an action by an heir-at-law for the construction of a will could

be maintained. This question was not involved in the determination of the case of *Read* v. *Williams*. It is true that, in that case, ANDREWS, J., said that this section had extended the remedy so as to include suits for the construction of devises in behalf of heirs claiming adversely to the will, but it will be observed that the decision of that question was in no way involved in the case, and under what circumstances such a suit could be maintained was not considered or determined.

On the other hand, it was held in *Ruppel* v. *Schlegel* (55 Hun, 183), decided in 1889, that an action by an heir-at-law could not be maintained for the construction of a will. In *Gage* v. *Gage* (43 Hun, 501), decided in 1887, the same doctrine was enunciated, although the question was not raised. In *Hovey* v. *Purdy* (10 N. Y. St. Rep., 40), decided in 1887, the doctrine, as it was established in *Weed* v. *Weed* and kindred cases, was distinctly held. It will be observed that the cases of *Horton* v. *Cantwell* and *Anderson* v. *Anderson* were decided since the enactment of section 1866; and while they do not decide the question we are considering, they seem to recognize the rule as it previously existed. Thus we see that the authorities bearing upon the question whether such a change has been wrought by that section are not harmonious.

When we refer to the statutes that have existed relating to this subject we find that section 1866 of the Code of Civil Procedure was not new, but a revision of section 1 of chapter 238 of the Laws of 1853, which provided: " The validity of any actual or alleged devise or will of real estate may be determined by the Supreme Court in a proper action for that purpose, in like manner as the validity of any deed conveying, or purporting to convey, lands might be determined by such court, and thereupon any party may be enjoined from setting up or from impeaching such devise as justice may require." This section was amended in 1879 so as to read as follows: " The validity of any actual or alleged devise or will of real estate may be determined by the Supreme Court in a proper action for that purpose, in which all persons interested, or who claim an interest in the question, may be made parties; and such action may be brought by any heir-at-law of the actual or alleged testator or testatrix, or by any devisee under any actual or alleged will; and thereupon, after final judgment in such action, any party may be enjoined from setting

up or from impeaching such devise or will as justice may require."
(Chap. 316, Laws of 1879.)

That section 1866 was intended as a substitute for the provisions
of section 1 of chapter 238 of the Laws of 1853 is shown by
Mr. Throop's note to that section. He also specifies therein the
amendments to the statute of 1853 intended, which do not include
any that would increase the jurisdiction of the court so as to author-
ize this action. A comparison of the statute of 1853 with the pro-
visons of section 1866, so far as they relate to the question under
consideration, shows that the only change made was that the words
"validity, construction or effect" were inserted in place of the word
"validity." It is claimed that this change in the phraseology of
the statute has enlarged the jurisdiction of a court of equity to an
extent authorizing this action, although the plaintiff's legal remedy
was full and adequate.

"It is a cardinal rule of equity that it will not entertain jurisdic-
tion of cases where there is an adequate remedy at law, or grant
relief unless for the purpose of preventing serious and irreparable
injury. These principles are elementary and lie at the foundation
of all equitable jurisdiction. Equity, therefore, interferes in the
transactions of men by preventive measures only when irreparable
injury is threatened, and the law does not afford an adequate
remedy for the contemplated wrong." (*Thomas* v. *M. M. P.
Union*, 121 N. Y., 52.)

"In all cases where the plaintiff holds or claims to have a purely
legal estate in land, and simply seeks to have his title adjudicated
upon, or to recover possession against an adverse claimant who also
relies upon an alleged legal title, there being no equitable feature
of fraud, mistake or otherwise, calling for the application of equitable
doctrines or the granting of peculiar equitable reliefs, the remedy
at law is adequate, and the concurrent jurisdiction of equity does
not exist. A suit in equity, under its concurrent jurisdiction, will
not be maintained to take the place of the action of ejectment, and
to try adverse claims and titles to land which are wholly legal, and
to award the relief of a recovery of possession." (1 Pomeroy's Eq.
Jur., 162, § 177, and cases cited in note 1.) Where the construction
of a statute has been settled by adjudication a mere change of

phraseology made in the revision of it should not be deemed to change the law unless it appears evident that such was the legislative intent. (*Du Bois* v. *Brown*, 1 Dem., 317; *Goodell* v. *Jackson*, 20 Johns., 697, 722; *In re Brown*, 21 Wend., 316; *Taylor* v. *Delancy*, 2 Cai. Cas., 143, 151.) So, too, the intention to change the rule of the common law will not be presumed from doubtful statutory provisions. The presumption is that no such change was intended unless the statute is clear and explicit in that direction. (*People* v. *Palmer*, 109 N. Y., 110; *Fitzgerald* v. *Quann*, Id., 441; *Dean* v. *M. E. R. Co.*, 119 id., 540.)

When we consider the question before us in the light of the then existing statutes, of which section 1866 was a revision, the rules so uniformly established that equity will not entertain such an action; that courts of equity will not try adverse legal claims to real estate therein; that an action in equity cannot be maintained when a full and adequate remedy at law exists, the statement in the note to section 1866 of the amendments intended, which do not include the one claimed, the presumption that no such change was intended, we are led to the conclusion that it was not the intent of the legislature by the addition of the words " construction or effect " to so change the law as it then stood as to authorize the maintenance of an action in equity where the sole purpose was to test the legal title to real property, and the action of ejectment would afford a full and adequate remedy.

Moreover, section 1866 provides that the question of the validity, construction or effect may be determined in like manner as the validity of a deed purporting to convey land may be determined. Thus it would seem that the right to maintain such an action is limited to cases where a similar action might be brought to determine the validity of a deed. I am aware of no principle that would justify a court of equity in determining the validity of a deed under which a person not in possession of real estate claimed title, as in such a case all the questions involved could be determined in an action at law for the possession of the premises.

Whether section 1866 is to be construed as simply declarative of the law as it previously existed under the former statutes and decisions, or whether it was intended to somewhat extend the remedy by a suit in equity so as to include the construction of a will where the

party seeking it is in possession, or for any other reason, has no immediate remedy at law, we need not now decide. We are, however, of the opinion that the legislature did not intend by this revision of the statute to confer such additional jurisdiction as would authorize the maintenance of a suit in equity to determine the title to real property, when the plaintiff has a full, adequate and immediate remedy by an action at law.

There has been no waiver or acquiescence on the part of the appellants. They have insisted from the first that the suit could not be maintained. This they have done by answer; by objection to evidence; by motion to dismiss the complaint; by request to find, and by exception to the rulings and decisions of the court upon such motions, objections and requests.

This case does not fall within the principle of *Town of Mentz* v. *Cook* (108 N. Y., 504). In that case it was alleged in the complaint, and admitted by the answer, that the plaintiff had no adequate remedy at law. In this there was no such allegation ; indeed, no allegation showing any necessity for the interposition of a court of equity. To this complaint the appellants answered that the plaintiffs had not the right to maintain the action, and that the complaint did not state a cause of action. Upon this state of the pleadings we do not think the appellants can be held to have waived their right to raise the question.

We are of the opinion that this suit could not be maintained, and that the learned referee erred in not dismissing it.

When, however, we pass the question of the respondents' remedy, and examine the question of their rights under the will of Joshua Whitney, our conclusion is, that the construction given to the will by the learned referee cannot be sustained. It is contended by the appellants, and we think justly, that, although the will in question contained no express devise of the Conklin farm to Charles Whitney or his heirs, yet, as its provisions, when construed in the light of the circumstances surrounding the testator when it was made, show that it was his obvious intent that Charles should have the whole benefit of the farm devised, there was a devise by implication whereby the heirs of Charles, upon his death, became vested with the title in fee. On the other hand, it is claimed by the respondents that, inasmuch as the trustee appointed by the will of Joshua Whitney neglected to execute the power to sell the premises or to convey

them to Charles during his lifetime, upon the death of Charles the title passed to the persons named in the residuary clause of the will, or to their heirs.

When we examine this will we find that it first makes provision for the testator's wife, daughter Mary and son Franklin. It then gives and devises to Washington Whitney the farm in question, to be held in trust, with power to lease, sell or dispose of it, and to pay to Charles the rent, interest or avails in such sums as he, Washington, might deem most prudent to meet the personal necessities of Charles, and guard against his improvidence. It then provides that if Charles should return home, become steady and wish to occupy the farm, the trustee might, if he thought best, convey the same to him.

The testator then states that he has advanced to his sons, Virgil, Vincent, Joshua and William their shares of his estate, and hence gives them nothing by his will.

Next he appoints Thomas G. Waterman, Franklin and Washington Whitney as his executors, and gives and devises to them the residue of his property, in trust, to collect all debts due him, to sell and dispose of all his real estate as soon as might be, and when the same was converted into money the executors were to pay his debts and divide the remainder equally between Pamelia Waterman, George, Washington and Franklin Whitney, taking into account, in determining the share of each, the sum that he or she had received as advancements which were therein specified.

At the time this will was made the testator was one of the leading citizens of the then village of Binghamton, was possessed of a considerable estate, and had seven sons and two daughters living; one son had previously died. By his will he made provision for each of them except those to whom he had already advanced their share, and as to those to whom he had made partial advancements he provided for equalizing the amount that each should receive, including such advancements as had been made, so that each should receive what the testator deemed his or her proper share of his estate. The whole purpose and purport of the will was to divide his estate among his children, including such amounts as had been advanced. When he came to the share which, in the division of his property was plainly intended for Charles, he devised that in trust to Washington to lease or sell, and pay the rent, interest or avails

in such sums as he should deem most prudent to meet the personal necessities of Charles and to guard against his improvidence. Much stress is laid upon the words "personal necessities" by the respondents, and it is claimed that the use of those words indicates that the testator did not intend a devise for the benefit of the heirs or family of Charles. We do not think the words are entitled to the significance claimed. The words "personal necessities" obviously were not used in the sense of being synonymous with individual necessities, but in the sense and to convey the idea that the property should be used for the support and maintenance of Charles and his family, if he should have one, rather than to permit the use of it in business, or for other speculative purposes. The statement that the rent, interest or avails were to be paid over to Charles in such sums as Washington deemed most prudent to meet the personal necessities of Charles, and to guard against his improvidence, strengthens the view we have taken and shows quite clearly, we think, that this farm was intended to be given to Charles, and he was to have the whole benefit of it; and that the only purpose of appointing a trustee was to prevent the dissipation of the property by his improvident habits. This view is still further strengthened by the provision that if Charles should return home and become steady and wish to occupy the farm, the trustee, if he thought best, might convey it to him. We think the primary purpose of the testator was to properly and justly divide his property among his children, and that his secondary purpose, which related exclusively to the property intended for Charles, was that the property devised to a trustee for Charles should be preserved by the trustee for his use, which would include providing for his family, if he had one. If the trustee thought best he might convey the title to Charles, if not it was to remain in the trustee for Charles' benefit.

Looking at the residuary clause of the will we find that the residuary estate was given and devised to trustees, to collect the debts and sell the land of which it consisted as soon as might be and divide the avails between certain of his children. The division was to occur as soon as such collections and sales were made, unless the executors saw fit to divide the real and personal estate without sale, when a division might be sooner made. Surely the testator could not have contemplated the sale of the farm in question, or that it should form any

portion of the property to be divided among the residuary legatees, or that the division by the executor of the residuary estate should await Charles' death. The testator evidently intended to dispose of all his property by his will, and to include in the residuary clause only what remained, excluding that mentioned in the preceding provisions, and by its terms disposed of, including that intended for Charles. When we consider all the provisions, and the general scope and apparent purpose of this will, it becomes quite manifest that the testator intended that Charles should have the full benefit of the Conklin farm, including its value as well as its use, and if it was not disposed of during his life that it should descend to his heirs.

Although a gift by express terms is not made in a will, a legacy by implication may be upheld where the words of the will leave no doubt of the testator's intent, and can have no other reasonable interpretation. (*Matter of Vowers*, 113 N. Y., 569; *Masterson* v. *Townshend*, 123 id., 458, 461; *Matter of Lapham*, 37 Hun, 15; *Woodward* v. *James*, 115 N. Y., 356; *Phillips* v. *Davies*, 92 id., 199; *Jackson* v. *Billinger*, 18 Johns., 368; *Sturges* v. *Cargill*, 1 Sandf. Ch., 318; *Cropton* v. *Davies*, L. R., 4 C. P., 159, 166.)

In *Matter of Vowers* the testator died leaving a widow, but no children. His will, after a provision made for his wife, contained the following clause: " This provision to be accepted by my wife in lieu of her dower right and distributive share in my estate. She may make her election whether she accepts this provision of my will within sixty days of the time of proving the same." The widow, within the time specified, made her election, rejecting the provision. The residuary estate was given to a nephew of the testator. In proceedings for the probate of the will it was held that, aside from her dower right, the widow was entitled to such share of the personal estate as the law would have given her had the deceased died intestate, and that, although there was no express devise of such share, there was a bequest by implication.

In *Masterson* v. *Townshend* the testator devised a half interest in real property to his executor to collect the rents and pay over $600 to his wife as long as she remained unmarried, and to pay the balance to his brother, but in the discretion of his brother and the executor, if it should be deemed advisable to sell, then the executor was authorized to sell, and from the proceeds to pay to the wife

$600 as long as she remained unmarried, and upon her marriage or death all the proceeds were to be paid to his brother. The widow remarried, and it was held that there was a devise by implication of the real estate by the testator to his brother, subject only to the trust made for the testator's widow.

In the *Matter of Lapham* a testator by will, which contained a general residuary clause, bequeathed to his aunt, for the exclusive benefit of her four children, the sum of $2,000, the interest and principal, if necessary, to be used for their education. There was no express direction to pay the fund, or any portion of it, to the children in any event, but it was held that the direction to do so was fairly implied, and that the title to the fund vested in the four children in equal shares.

In *Woodward* v. *James* it was held that the devise of an estate to a person as trustee was raised by implication, as the exigencies and situation required it, and that intention was indicated by the will.

In *Phillips* v. *Davies* it was held that a power of sale was conferred upon the executors by implication, extending it beyond that specifically mentioned in the will.

In *Jackson* v. *Billinger*, H., by his will, devised as follows: " My will and personal pleasure is that my son John shall have the farm which I now live upon, etc., two of the best negroes, all of my wearing apparel, three geldings, etc., but if my said son may happen to die unmarried, without lawful issue, then it is my will and pleasure that the said estate shall descend to my next heir of the name of H., and that he may not sell, exchange or dispose of any part of said estate without the consent, approbation and concurrence of my executors." The testator died in August, 1775, leaving five sons and eight daughters. John, the devisee, died April 20, 1817, unmarried and without issue, leaving one sister and nephews and nieces. It was there held that John, the devisee, took an estate tail by implication. and that the devise over, depending upon indefinite failure of issue, was not good as an executory devise; and the estate tail being converted into an estate in fee simple by the statute, it descended on the death of John to his heirs-at-law according to the statute regulating descents.

In *Sturges* v. *Cargill* it was held that where the language of a will necessarily confines the interest of the parent to his life, the

courts, in construing it, will lay hold of slight circumstances to raise a gift in the children and avoid imputing to the testator the extraordinary intention of giving the property to the devisee or legatee over, and leaving the issue of the tenant for life unprovided for. In that case D. C. by his will, after providing for his wife, divided his real estate in five portions which were nearly equal. He first gave one of the portions to his executors, in trust, and they were to hold it for the separate use of his daughter Jane during her life, but the will was silent as to the trust estate after his death. The next portion he gave to his son Thomas in fee. The next portion he gave to his executors, in trust, for the use of the wife of his son Henry during her life, and on her death the estate was to descend to Henry's children. The fourth portion was given to trustees in like manner for the use of his son Edward during life, and after his death the estate was to go to Edward's heirs. And the fifth and last portion he gave, in part, to his son David in fee, and in part to David for life, with remainder to his right heirs. The residue of his estate the testator gave to his executors, in trust, to divide among his children and daughter-in-law before named, to and for the same estates, uses, limitations and trusts as before provided. He authorized his executors to sell any of the real estate, and on their selling any they were to arrange it so as to make up the share out of which it was sold equal to the other shares so that no one of his children or such devisees should be losers by such sale or less benefited by his bounty thereby devised to them severally and respectively. At the date of the will his daughter Jane had a large family of children, and her husband was, in the testator's opinion, unfit to manage her estate. No reason or circumstance appeared which could have induced the testator to omit a provision for these children. On the construction of the will, held that the effect of the devise was to vest the first parcel in trustees in trust for Jane for life, with remainder to her children.

In *Cropton* v. *Davies* a testator devised three freehold houses to trustees in trust as to the first two, to receive the rents and pay the same to his wife during her life or widowhood; and after her decease or second marriage, as to the first upon trust, to convey and assign the same to his daughter E. A. M., her heirs and assigns forever; as to the second, in similar terms to his daughter C. R. M.,

and, as to the third upon trust, to apply the rents for the advancement and benefit of my grand-daughter M. A. C. until she attained the age of twenty-one years; but in case my said grand-daughter should die under that age, then I devise the said dwelling-house, etc., to my daughters E. A. M. and C. R. M., their heirs and assigns as tenants in common. Held, that the trustees took a legal estate in fee in the three houses, and that the grand-daughter, by implication, took an equitable estate in fee in the third house, subject to defeasance in the event of her dying under twenty-one years of age.

Where a will is capable of two constructions, one of which will exclude the issue of a deceased child, and the other include such issue, the latter construction should be adopted. (*Matter of Estate of Brown*, 93 N. Y., 295, 299.)

As when we consider all the provisions of this will, we come unhesitatingly to the conclusion that it was the testator's intent that Charles should have the full benefit of this farm, and if he should die leaving it or any portion of it unexpended, it should vest in his heirs, the authorities cited seem to justify us in holding that, upon the death of Charles, the title vested in Mary Lawrence and Jane O. Whitney, subject to any dower the widow might have therein. This determination is eminently just and equitable, and, as it carries into effect the manifest intent of the testator, should, we think, prevail.

We are of the opinion that, upon the death of Charles, the real estate in question descended to the appellants, Mary Lawrence and Jane O. Whitney, subject to any right of dower their mother may have therein.

Why the moneys advanced by one of the appellants for the support of Charles and his family, which was nearly equal to the value of the farm, should not have been declared a lien upon it as well as his funeral expenses; the effect of section 21, chapter 2, part 2 of the Revised Statutes, and several other interesting questions were presented in this case, but the view we have taken of those already considered renders their examination and decision unnecessary.

We think, for the reasons already stated, the judgment should be reversed.

HARDIN, P. J., concurred.

MERWIN, J.:

I think that, under section 1866 of the Code, the action is maintainable. I concur, however, in the construction given by Brother MARTIN to the will, and upon that ground favor a reversal.

Judgment reversed and a new trial ordered, with costs of this appeal against the respondents to abide the event.

